UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF LOUISIANA
BATON ROUGE DIVISION

| | | |
|---|---|---|
| DOUG WELBORN, IN HIS OFFICIAL CAPACITY AS CLERK OF COURT OF THE NINETEENTH JUDICIAL DISTRICT FOR THE PARISH OF EAST BATON ROUGE, LOUISIANA; | § § § § § § § | |
| *Plaintiff,* | § § § | |
| v. | § § | CIVIL ACTION NO. 3:12-cv-220 |
| THE BANK OF NEW YORK MELLON; BANK OF AMERICA; CHASE HOME MORTGAGE CORPORATION OF THE SOUTHEAST; CITIMORTGAGE, INC.; GMAC RESIDENTIAL FUNDING CORPORATION; HSBC FINANCE CORPORATION; MERRILL LYNCH CREDIT CORPORATION; NATIONWIDE ADVANTAGE MORTGAGE COMPANY; SUNTRUST MORTGAGE, INC.; UNITED GUARANTY CORPORATION; WASHINGTON MUTUAL BANK; WELLS FARGO BANK, N.A.; DEUTSCHE BANK, A.G.; U.S. BANK; J.P. MORGAN CHASE BANK, N.A.; HSBC BANK USA, N.A.; LA SALLE BANK, N.A.; | § § § § § § § § § § § § § § § § § § § § | PLAINTIFF'S ORIGINAL COMPLAINT |
| *Defendants.* | § | |

PLAINTIFF'S ORIGINAL COMPLAINT – Page 1

PLAINTIFF, Doug Welborn, in his official capacity as Clerk of Court of the Nineteenth Judicial District for the Parish of East Baton Rouge, Louisiana (**"Plaintiff"**), files this lawsuit complaining of Defendants Bank of America, Chase Home Mortgage Corporation of the Southeast ("Chase"), CitiMortgage, Inc. ("Citi"), GMAC Residential Funding Corporation ("GMAC"), HSBC Finance Corporation ("HSBC"), Merrill Lynch Credit Corporation ("Merrill Lynch"), Nationwide Advantage Mortgage Company ("Nationwide"), SunTrust Mortgage, Inc. ("Suntrust"), United Guaranty Corporation ("United"), Washington Mutual Bank ("Washington Mutual"), and Wells Fargo Bank, N.A. ("Wells Fargo"), (**collectively "Defendant Shareholders"**), and Defendants The Bank of New York Mellon ("BNY Mellon"), Wells Fargo Bank, N.A. ("Wells Fargo"), Deutsche Bank, A.G. ("Deutsche"), U.S. Bank ("U.S. Bank"), J.P. Morgan Chase Bank, N.A. ("J.P. Morgan Chase"), HSBC Bank USA, N.A. ("HSBC Bank"), and LaSalle Bank, N.A. ("LaSalle") (**collectively "Defendant Trustees"**), and alleges as follows:

## I.  INTRODUCTION

1.      Plaintiff brings this action against corporate entities that conspired to avoid payment of recording fees from 2002 through present, thereby damaging Plaintiff.  The Defendant Shareholders directed and controlled Mortgage Electronic Registrations Systems, Inc. and MERSCORP, Inc. (collectively "MERS").  MERS is a scheme used to increase profits in the secondary mortgage market by misrepresenting the need for recording mortgage assignments, thus avoiding the payment of recording fees for assignments of mortgages backing securities issued by Defendant Shareholders and Defendant Trustees to the public.  Through a series of fraudulent misrepresentations, the MERS scheme enables Defendants to unlawfully avoid payment of required recording fees, thus directly increasing the Defendants' profits in the secondary mortgage market while costing Plaintiff the financial benefits flowing from the

receiving fee revenue. Plaintiff seeks to enjoin Defendants and to recover damages Plaintiff suffered as a result of the MERS scheme under 18 U.S.C § 1964(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

## II. JURISDICTION AND VENUE

2.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 (federal question) and 18 U.S.C. § 1964(c) (person injured in their business or property by reason of a RICO violation).

3.      Venue is proper in the Middle District of Louisiana pursuant to 28 U.S.C. § 1391(b)(2) and 18 U.S.C. § 1965(a) because Defendants reside, are found, have an agent, and/or transact their affairs in this District and a substantial part of the events or omissions giving rise to this claim have occurred in this District.

## III. PARTIES

4.      Plaintiff, Doug Welborn, in his official capacity as Clerk of Court of the Nineteenth Judicial District for the Parish of East Baton Rouge, Louisiana, is a political officer and office created by the State of Louisiana, with the right to sue and be sued in his official capacity.

5.      Defendants Bank of America, Chase, Citi, GMAC, HSBC, Merrill Lynch, Nationwide, SunTrust, United, Washington Mutual, and Wells Fargo are shareholders of MERSCORP, Inc., and "MERS members" of Mortgage Electronic Registration Systems, Inc.

6.      Defendants BNY Mellon, Wells Fargo, Deutsche, J.P. Morgan Chase, HSBC Bank, and LaSalle are also trustees of residential mortgage backed securities.

7.      Defendant BNY Mellon is a financial institution doing business in the State of Louisiana as BNY Mellon RCC, LLC, and may be served through its registered agent: Corporation Service Company, 320 Somerulos Street, Baton Rouge, Louisiana 70802-6129.

8.      Defendant Bank of America is a financial institution doing business in the State of Louisiana, and may be served through its registered agent: CT Corporation System, 5615 Corporate Boulevard, Suite 400B, Baton Rouge, Louisiana 70808.

9.      Defendant Chase has merged with and into the financial institution J.P. Morgan Chase, and may be served through its successor J.P. Morgan Chase's registered agent: CT Corporation System, 5615 Corporate Boulevard, Suite 400B, Baton Rouge, Louisiana 70808.

10.     Defendant Citi is a financial institution doing business in the State of Louisiana, and may be served through its registered agent: CT Corporation System, 5615 Corporate Boulevard, Suite 400B, Baton Rouge, Louisiana 70808.

11.     Defendant GMAC has changed its name to Ally Bank Corp., and may be served through its successor Ally Bank Corp.'s registered agent: Corporation Service Company, 320 Somerulos Street, Baton Rouge, Louisiana 70802-6129.

12.     Defendant HSBC is a financial institution doing business in the State of Louisiana, and may be served through its registered agent: CT Corporation System, 5615 Corporate Boulevard, Suite 400B, Baton Rouge, Louisiana 70808.

13.     Defendant Merrill Lynch is a financial institution doing business in the State of Louisiana, and may be served through its registered agent: CT Corporation System, 5615 Corporate Boulevard, Suite 400B, Baton Rouge, Louisiana 70808.

14.     Defendant Nationwide is a financial institution doing business in the State of Louisiana, and may be served through its registered agent: CT Corporation System, 5615 Corporate Boulevard, Suite 400B, Baton Rouge, Louisiana 70808.

15.    Defendant SunTrust is a financial institution doing business in the State of Louisiana, and may be served through its registered agent: Corporation Service Company, 320 Somerulos Street, Baton Rouge, Louisiana 70802-6129.

16.    Defendant United is a financial institution doing business in the State of Louisiana, and may be served through its registered agent: CT Corporation System, 5615 Corporate Boulevard, Suite 400B, Baton Rouge, Louisiana 70808.

17.    Defendant Washington Mutual has merged with and into the financial institution J.P. Morgan Chase, and may be served through its successor J.P. Morgan Chase's registered agent: CT Corporation System, 5615 Corporate Boulevard, Suite 400B, Baton Rouge, Louisiana 70808.

18.    Defendant Wells Fargo is a financial institution doing business in the State of Louisiana, and may be served through its registered agent: Corporation Service Company, 320 Somerulos Street, Baton Rouge, Louisiana 70802-6129.

19.    Defendant Deutsche is a foreign financial institution that does not maintain a registered agent in the State of Louisiana and has no offices or officers present in Louisiana. Deutsche's principal place of business is in Frankfurt, Germany and its U.S. headquarters are located in New York, New York. Service may be made upon the Secretary of State pursuant to La. C. C. P. Art. 1262.

20.    Defendant U.S. Bank is a foreign financial institution that does not maintain a registered agent in the State of Louisiana and has no offices or officers present in Louisiana. The parent company of U.S. Bank is U.S. Bancorp, which is headquartered in Minneapolis, Minnesota. Service of U.S. Bank may be made upon the Secretary of State pursuant to La. C. C. P. Art. 1262.

21.     Defendant J.P. Morgan Chase is a financial institution doing business in the State of

Louisiana, and may be served through its registered agent: CT Corporation System, 5615

Corporate Boulevard, Suite 400B, Baton Rouge, Louisiana 70808.

22.     Defendant HSBC Bank is a financial institution doing business in the State of Louisiana,

and may be served through its registered agent: CT Corporation System, 5615 Corporate

Boulevard, Suite 400B, Baton Rouge, Louisiana 70808.

23.     Defendant La Salle has merged with and into Bank of America, and may be served

through its successor Bank of America's registered agent, C/O CT Corporation System, 5615

Corporate Boulevard, Suite 400B, Baton Rouge, Louisiana 70808.

## IV.  LEGAL BACKGROUND

24.     Plaintiff refers to the following pertinent statutes:

**A.     The Louisiana Public Records Doctrine**

25.     Louisiana has a clear statutory scheme promoting the recordation of mortgages, mortgage

transfers and other instruments affecting immovable property:

> The rights and obligations established or created by the following written
> instruments are **without effect** as to a third person **unless the instrument is
> registered by recording it in the appropriate mortgage or conveyance records**
> pursuant to the provisions of this Title:
> 1) **An instrument that transfers an immovable or establishes a real right in
>    or over an immovable.**
> 2) The lease of an immovable.
> 3) An option or right of first refusal, or a contract to buy, sell, or lease an
>    immovable or to establish a real right in or over an immovable.
> 4) **An instrument that modifies, terminates, or transfers the rights created
>    or evidenced by the instruments described in Subparagraphs (1) through
>    (3) of this Article.**

La. C. C. Art. 3338 (2010) (emphasis added).

**B.     The Racketeer Influenced and Corrupt Organizations Act ("RICO") statute**

26.     The RICO statute provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

27.     The RICO statute provides a private cause of action to (1) any person (2) who has been injured in their business or property (3) by reason of a qualifying enterprise's affairs through a pattern of acts indictable as mail or wire fraud. 18 U.S.C. § 1964(c).

28.     A person commits mail fraud whenever that person, having devised any scheme to defraud, uses the mail or any private or commercial carrier while executing that scheme. 18 U.S.C. § 1341. Any mailing that is incident to an essential part of the scheme satisfies the mailing element, even if the mailing itself contains no false information.

29.     A person commits wire fraud whenever that person, having devised any scheme to defraud, transmits or causes to be transmitted by means of wire, radio or television communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds for the purpose of executing that scheme. 18 U.S.C. § 1343. The word "electronic" contained in the MERS acronym refers to the Defendants' use of a web site, telephones and other wire communications in furtherance of the MERS scheme.

30.     Defendants each engaged in two or more acts of mail and/or wire fraud within the past ten years.

## V.  CONDITIONS PRECEDENT

31.     All conditions precedent have been performed or have occurred.

## VI.  FACTUAL BACKGROUND

32.     The MERS system was created by the Defendant Shareholders in 1993.  Mortgage Electronic Registration Systems, Inc. is a private corporation acting as a private national electronic registry that supposedly tracks interests and servicing rights in mortgage loans. Mortgage lenders and other entities, known as "MERS members," subscribe to the MERS system and pay nominal annual fees for the electronic processing and tracking of ownership and transfers of mortgages.

33.     Since the creation of MERS, Defendant Shareholders have promoted and operated MERS as a scheme to increase their profits in the secondary mortgage market by misrepresenting the need for recording mortgage assignments, thus avoiding the payment of assignment recording fees on the mortgages backing securities issued by Defendant Shareholders and Trustees to the public.

**A.      The MERS Scheme**

34.     Traditionally, mortgage originators financed their mortgage business through customer deposits, retained ownership of the loans they originated, and directly received the mortgage payment streams.  This became known as the "originate to hold" model.

35.     Under this model, if the mortgage originator sold the loan, the note would be indorsed and the mortgage would be assigned in a contemporaneous transaction.  The assignment would then be recorded, pursuant to the state's recording laws, in order to preserve the investor's security lien on the property.  This transaction would look like this:



36.     Under the MERS scheme, MERS is named nominee and mortgagee for members'

successors and assignees through an assignment of the members' interests to MERS.  The

members then retain the note and servicing rights to the mortgage.  Whenever a MERS member

electronically sells or transfers its interest in a mortgage loan to another MERS member, MERS

privately tracks the assignment within its system but does not file any indication of such transfer

in the Plaintiff's records.

37.     As long as the sale of the note is made to another MERS member, MERS represents that

they are the "nominee for the new beneficial owner," and does not record the assignment in the

public records.  Since there is not an assignment recorded in the public records, MERS members

avoid paying an assignment fee to the parish, no matter how many times the note is transferred.

38.     The MERS model theoretically looks like this:



39.     A person satisfying their obligation and paying off the promissory note must pay the owner of that note to discharge any mortgage. A foreclosing party must possess and hold both the note and the mortgage securing the note in order to have standing to foreclose on the mortgage lien. In the event that a mortgagor stops paying their note, MERS attempts to recombine the note and mortgage by recording an assignment of the mortgage to the current holder of the note.

40.     The MERS scheme is defective and deficient. MERS purports to work by separating the promissory note from the mortgage. Under established Louisiana law, the note and the mortgage

are inseparable.  As such, a transfer of a note carries the mortgage with it, but the assignment of a mortgage without the note is a nullity.  Therefore, under Louisiana law, the MERS transaction is actually:



## B.    MERS' fraudulent misrepresentations

41.    Defendant Trustees have a duty to create and maintain a perfected lien on the mortgages backing securities that they have issued to the public.  This duty requires that the Defendant Trustees properly record each mortgage and any subsequent conveyance of that mortgage in order to maintain priority of the lien under the Louisiana Public Records Doctrine.

42.     Properly recording the assignments requires that the parish be paid a recording fee.  The Defendants created the MERS scheme in order to avoid payment of these fees and maximize their profits.

43.     Since 1993, Defendants have represented and/or caused to be represented that once MERS is named as mortgagee, MERS acts as nominee mortgagee in the public records for any MERS member that presently holds the mortgage lien or may hold the mortgage lien in the future.

44.     Defendants have further represented and/or caused to be represented that because MERS was the nominee mortgagee of record for the entire time that the mortgage was in the MERS system, the initial recorded assignment to MERS provides protection under Louisiana Public Records Doctrine to all the MERS members' interests in the mortgage, despite the numerous subsequent transfers of the notes.

45.     This claimed blanket protection under the Louisiana Public Records Doctrine to MERS members is purportedly achieved by separating the note and mortgage.  In the MERS scheme, the mortgage is assigned to MERS while the note is severed and transferred among the MERS members.

46.     The mortgage is assigned as a matter of law each time the note is transferred to a subsequent MERS member.  These assignments must be recorded to protect the priority of the assigned mortgage from creditors and subsequent bona fide purchasers.

47.     The Defendants' representation that registration in the MERS system will protect subsequent transfers of the mortgage under the Louisiana Public Records Doctrine is false.  As a result of this misrepresentation, mortgage assignments between MERS members have not been recorded in the parish records.

48.     To facilitate this fraud, the Defendant Shareholders have engaged in and/or caused: publication of manuals and postings on the MERS web site misrepresenting Louisiana property law and the need for recording mortgage transfers; mailing of false notices to Plaintiff, homeowners and others; and concealment of the non-perfected status of assignments between MERS members.

49.     The recording of the mortgage assignments is critical to protecting the property owner to permit proper payment and satisfaction of their obligation, and an individual mortgage holder's interest against creditors or subsequent bona fide purchasers.  It is essential to give notice of the interest to the property owner, Plaintiff and the world and to preserve the reliability and accuracy of public records.

50.     Plaintiff, homeowners, the general public and the courts do not have access to the vast majority of information maintained on the MERS system, including records reflecting the sale of mortgage loans from one financial institution to another.  Thus, as a result of the creation of MERS, one can no longer look to the public recording system as a reliable source for identifying the proper payment of the obligation, tracking the chain of title for a loan or for identifying the current beneficial owner of the mortgage.  Although financial institution members are supposed to update the MERS system to reflect this information, MERS relied on its members to voluntarily register transactions and did not take sufficient steps to ensure that its members did so or that MERS system data were current and accurate.

51.     The Defendants recognize the general need for recordation of mortgages and assignments in the public records.  MERS itself requires recordation of the initial mortgage in MERS' name, and for recordation of any modifications to the mortgage, and concedes that it is necessary to record a mortgage assignment in the public records in the event that the mortgage is transferred

to a party not a member of MERS. The MERS Defendants also typically record an assignment to the current servicer or beneficial interest owner shortly before foreclosure, recognizing that a transfer on the MERS system is not a perfected transfer of interest for foreclosure purposes.

52.     Defendants represent to investors that recordation is not necessary if a mortgage is assigned to another MERS member. Instead, the Defendants claim that registration of an assignment on the MERS system replaces the parish recording system in such cases, and, contrary to Louisiana law, that the MERS system protects an investor's interest as soundly against bona fide purchasers as recording.

53.     MERS Shareholders acknowledge that, although the MERS system tracks changes of ownership, it cannot transfer beneficial rights to the debt. Defendants admit that additional endorsements or assignments are necessary to transfer the property interest.

54.     Plaintiff does not allege that security instruments are unenforceable or foreclosures are inappropriate where MERS is a party, nor does Plaintiff suggest that the MERS system of serving as nominee and electronically tracking mortgage transfers is inherently invalid.

55.     Plaintiff instead alleges that, in order to maintain perfection of a mortgage securing a loan transferred to anyone, whether members of the MERS system or not, a valid mortgage assignment must be recorded for that mortgage in the parish records. Failure to do so results in the mortgage no longer being protected under the Louisiana Public Records Doctrine. Defendants have a duty to maintain the perfection of the mortgages securing each mortgage loan backing a mortgage-backed security by properly recording all mortgage assignments in the parish records.

56.     Plaintiff is entitled to receive a fee when the mortgage assignment is properly recorded in the parish records.

57.     In order to avoid paying this fee, the Defendants: operated and directed the affairs of MERS to enable them to transfer mortgages in a manner designed to unlawfully avoid payment of required recording fees; directed misleading publications to investors and the general public regarding the need for properly recording mortgage conveyances; actively concealed the lack of valid assignments from investors; and mailed and/or electronically transmitted false information and/or notices, including, but not limited to, foreclosure documents, to Plaintiff, homeowners and others.

58.     The Defendant Trustees conspired with the Defendant Shareholders to create the MERS scheme, and assisted in implementing the scheme by disregarding their duty as trustees to ensure proper perfection of the mortgages, all in order to facilitate the creation and profitability of mortgage-backed securities. Trustees were not members of MERS and transfers to Trustees must be recorded in the proper offices of the Plaintiff Parish.

**C.     Use of mail and wires**

59.     Defendant Shareholders execute their scheme to defraud by posting and/or causing to be posted misleading statements and fraudulent materials on the MERS web site. These misleading statements include the assertion that "any loan registered on the MERS system is inoculated against future assignments because MERS remains the nominal mortgagee no matter how many times servicing is traded." In addition, fraudulent marketing brochures advertising the MERS system are made available for download. Phone and fax numbers are posted whereby investors and potential members may contact MERS representatives regarding its services.

60.     A mail facility has been established as part of MERS' business operations. Each of the Defendants have mailed or caused to be mailed thousands of mailings in furtherance of the MERS scheme in order to unlawfully avoid payment of the required recording fees.

61.     Each of the Defendants has conducted and/or participated in the conduct of the MERS

Enterprise's affairs through a pattern of racketeering activity in violation of RICO, 18 U.S.C. §

1962(c), by engaging in numerous acts of mail fraud and/or wire fraud.

## VII.  CAUSE OF ACTION

62.     Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 61 of

this Complaint in their entirety as though fully set forth herein.

63.     At all relevant times, each defendant was a "person" within the meaning of RICO, 18

U.S.C. § 1961(3).

64.     All Defendants, together with Mortgage Electronic Registration Systems, Inc. and

MERSCORP, Inc., constitute an association-in-fact "enterprise" (the "MERS Enterprise") as that

term is defined in 18 U.S.C. § 1964(4), that engages in, and the activities of which affect,

interstate commerce.  The members of the MERS Enterprise are and have been associated

through time, joined in purpose and organized in a manner amenable to hierarchal and

consensual decision-making, with each member fulfilling a specific and necessary role to carry

out and facilitate its purpose.  Specifically, Defendant Shareholders operated and directed the

affairs of MERS to enable them to transfer mortgages in a manner designed to unlawfully avoid

payment of required recording fees, directed the publication of advertising materials to investors

and the general public misrepresenting the need for properly recording mortgage conveyances,

actively concealed the lack of valid assignments from investors, and mailed false notices,

including, but not limited to, foreclosure documents, to Plaintiff, homeowners and others.  The

Defendant Trustees conspired with the Defendant Shareholders to create the MERS scheme, and

assisted in implementing the scheme by disregarding their duty as trustees to ensure proper

perfection of the mortgages, facilitating the creation and profitability of mortgage-backed

securities.  The execution of the MERS scheme would have been beyond the capacity of each

member of the MERS Enterprise acting singly and without the aid of each other.

65.     The MERS Enterprise affects interstate commerce.  MERS represents that at least 60

million mortgages are recorded on its system, which accounts for approximately sixty percent

(60%) of all mortgages in the country.  In addition, participants in the MERS Enterprise include

national banks that have been identified by the federal government as "too big to fail" because

they are so critical to the national economy.

66.     Each defendant is or has been associated with the MERS Enterprise.  The Defendants

began implementing the MERS scheme before 2002, and they have continued to execute the

fraud and scheme through the present.

67.     All of the Defendants received a financial benefit for their participation in the MERS

Enterprise.  Such financial benefits for Defendants were the product of the scheme and could not

have been realized had the Defendants not been able to unlawfully avoid payment of the required

recording fees.

68.     Each of the Defendants have mailed or caused to be mailed thousands of mailings in

furtherance of the MERS scheme in order to unlawfully avoid payment of the required recording

fees.  Each Defendant has employed the Internet and interstate wires in furtherance of the MERS

Enterprise.

69.     Further, each of the Defendants has conducted and/or participated in the conduct of the

MERS Enterprise's affairs through a pattern of racketeering activity in violation of RICO, 18

U.S.C. § 1962(c), by engaging in numerous acts of mail fraud and/or wire fraud.  False

representations or fraudulent pretenses made by defendants include:

1) misrepresenting to homeowners, investors and MERS members the need for recordation of assignments in the parish records;

2) mailing and/or electronically transmitting false notices, including foreclosure documents, to Plaintiff, homeowners and others;

3) actively concealing its lack of valid assignments from investors, Plaintiff and homeowners.

70.    The Plaintiff and other parishes in Louisiana were the targets of the MERS Enterprise's false misrepresentations, because the anticipated and intended harm of the MERS scheme was the avoidance of required recording fees.  Plaintiff is not required to show direct reliance on the fraudulent statements made by Defendants to establish a claim under RICO, only that his loss was foreseeable.

## VIII.  DAMAGES

71.    Plaintiff hereby demands treble damages pursuant to 18 U.S.C. § 1964(c).

72.    Plaintiff has suffered the loss of recording fee revenue that he would have received had the Defendants not implemented the MERS scheme and unlawfully avoided payment of the recording fees.  If Defendants had not engaged in such conduct, Plaintiff would have received payment for each assigned mortgage in the amount of $25.00 for the first page, $10.00 for each page thereafter up to ten (10) pages, and $8.00 for each subsequent page after the first if a document exceeds ten (10) pages.  Plaintiff does not have access to sufficient information to identify the amount of damages incurred because that information, the number of times each mortgage in the MERS system has been assigned, is in the sole possession of the Defendants. Plaintiff conservatively estimates that each mortgage document is an average of ten (10) pages,

and that MERS shareholders have failed to record ten (10) to twelve (12) subsequent transfers of interest in each mortgage.

## IX.  PERMANENT INJUNCTION

73.     Plaintiffs seek and are entitled to a permanent injunction requiring Defendant Trustees to record, in the Plaintiff's records, each promissory note and mortgage for which they are trustee and each transfer of ownership or beneficial interest from inception of the promissory note and mortgage to ultimate placement of same in the trust.

## X.  ATTORNEYS' FEES

74.     Plaintiff hereby requests a reasonable and necessary attorneys' fee, as allowed under 18 U.S.C. § 1964(c).  The actions of Defendants have required Plaintiff to retain the undersigned attorneys, and Plaintiff has agreed to compensate them for their reasonable and necessary fees.

## XI.  JURY DEMAND

75.     Plaintiff hereby demands a trial by jury.

## XII.  PRAYER

WHEREFORE, Plaintiff respectfully requests judgment against Defendants, jointly and severally, and for relief as follows:

(a)     Treble damages;

(b)     Prejudgment interest as permitted by law;

(c)     Reasonable attorneys' fees and costs;

(d)     Interest on the judgment as provided by law;

(e)     A permanent injunction, as specified herein;

(f)     Such other relief as the Court deems just and proper.

Respectfully submitted,

**BLUME, FAULKNER,**
**SKEEN & NORTHAM, PLLC**
**Richard D. Faulkner**, *Local Counsel*
Louisiana Bar No. 05470
**James D. Blume**
*Pro Hac Vice* Admission Pending
111 W. Spring Valley Road
Suite 250
Richardson, Texas 75081
 (214) 373-7788
 (214) 373-7783 – fax

**MARTINY & ASSOCIATES, LLC**
**Daniel R. Martiny**
Louisiana Bar No. 09012
131 Airline Drive
Suite 201
Metairie, Louisiana 70001
(504) 834-7676
(504) 834-5409 - fax

*Attorneys for Plaintiff*

**TED B. LYON & ASSOCIATES**
**Ted B. Lyon**, *Trial Attorney*
*Pro Hac Vice* Admission Pending
18601 LBJ Freeway
Suite 525
Mesquite, Texas 75150
(972) 279-6571
(972) 279-3021 - fax