DOUG WELBORN *et al.*,

Plaintiffs,

v.

THE BANK OF NEW YORK MELLON *et al.*,

Defendants.

Civ. A. No. 3:12-CV-220

## REPLY BRIEF IN SUPPORT OF
## DEFENDANTS' JOINT MOTION TO DISMISS

In their opening brief, Defendants demonstrated that the Court should dismiss the First

Amended Complaint ("FAC") in its entirety (i) because the Louisiana Legislature did not grant

Plaintiffs a right of action to enforce perceived violations of Louisiana recording statutes, (ii)

because Plaintiffs lacked standing to sue under state law and under the RICO statute, and (iii)

because the FAC failed to state a cognizable claim for relief under RICO for multiple reasons.

Memorandum Of Law In Support Of Defendants' Motion To Dismiss First Amended Complaint

(July 20, 2012) ("Motion"). Faced with these arguments, Plaintiffs jettisoned state law as the

source of the supposed duty to record. They now claim that the federal Trust Indenture Act (a

statute not even mentioned in the FAC) allows them to maintain this action. Second Amended

Complaint (Aug. 24, 2012)("SAC") ¶¶ 24-25.[1]

---

[1]     Plaintiffs sought leave to file the SAC after they opposed Defendants' Motion. The
parties agreed that Defendants' previously filed motion to dismiss would be considered a motion
directed at the SAC, and that Plaintiffs' previously filed opposition would be considered an
opposition to that motion. Stipulation Regarding Plaintiffs' Motion For Leave To File Second
Amended Complaint (Aug. 24, 2012).

Plaintiffs' new theory is as baseless as their first. The Trust Indenture Act regulates the issuance of certain debt securities purchased by the public, and it does not create any private right of action for state clerks to sue if they believe mortgage assignments should have been recorded. Moreover, the Act does not mandate that creditors record mortgage assignments in parish land records; rather, it merely requires an issuer to deliver to the indenture trustee an opinion of counsel stating that the *indenture* either has been recorded or need not be. Finally, Plaintiffs' late shift to federal law does not change the fact that Plaintiffs lack standing to sue, and that their RICO cause of action still fails to state a claim.

Eight courts already have dismissed with prejudice lawsuits like this one alleging failure to record assignments in land records. <u>Motion</u> at 1 n.1. Since then, a ninth has added its voice to that chorus and dismissed with prejudice a similar Iowa lawsuit also brought by a county recorder.[2] Neither the Trust Indenture Act nor RICO changes the fact that Plaintiffs' lawsuit is meritless; they merely require the Court to take a different route to the same result. The Second Amended Complaint should be dismissed.

## I. FEDERAL LAW DOES NOT EMPOWER PLAINTIFFS TO SUE, JUST AS STATE LAW DOES NOT.

In their opening brief, Defendants demonstrated in detail that the Court should dismiss this lawsuit because the Louisiana Legislature did not grant Plaintiffs a private right of action to enforce perceived violations of La. Civ. C. Art. 3338, a statute they contended in the FAC mandates recording of mortgage assignments. <u>Motion</u> at 7-11. In response, Plaintiffs abandon their reliance on the Louisiana Civil Code, now claiming that they have a right of action because

---

[2]    *Plymouth County, Iowa. v. MERSCORP, Inc.*, No. 12-4022, 2012 U.S. Dist. LEXIS 117709, at *25 (N.D. Iowa Aug. 21, 2012) ("Here, it could not be plainer that none of the statutes upon which the County relies imposes a *requirement* on a party assigning a mortgage or receiving such an assignment to record the assignment").

Case 3:12-cv-00220-JJB-SCR    Document 94    09/10/12    Page 2 of 22

the duty to create and record mortgage assignments "comes from a Federal statute and/or representations made pursuant to Federal law." Memorandum of Law In Support Of Plaintiffs' Response To Defendants' Motion To Dismiss First Amended Complaint (Aug. 10, 2012) ("Opposition") at 15. This change of direction does not cure the defect Defendants identified— Plaintiffs do not have a right to sue.

## A.    Plaintiffs Have No Private Right Of Action Under Federal Law.

The federal statute Plaintiffs now rely on is the Trust Indenture Act of 1939 ("TIA" or "Act"). Although Plaintiffs argue at length that the TIA imposes a duty to record assignments (a contention which Defendants show below is demonstrably incorrect), nowhere do Plaintiffs point to any provisions in the Act that authorize a lawsuit by parish clerks to enforce alleged violations of the TIA. Opposition at 5-12. Plaintiffs bear the burden of demonstrating that the statute on which they base their lawsuit grants them a right of action,[3] but they have failed entirely to carry that burden here. For that reason alone, dismissal is required.

Plaintiffs could not have met their burden had they tried. The TIA is not a statute that has anything to do with parish land records. Rather, Congress passed the Act to regulate aspects of certain types of publicly sold securities: it applies to "notes, bonds, debentures, evidences of indebtedness, and certificates of interest or participation therein, which are offered to the public." 15 U.S.C. § 77bbb(a). Thus, the Act imposes certain reporting requirements (*e.g.*, *id.* §§ 77mmm, 77nnn(a)(3)), provides for the appointment of trustees to perform specified functions (*id.* § 77jjj, 77ooo), sets standards for eligibility of trustees (*id.* § 77jjj), and imposes certain obligations on issuers for the benefit of the trustee (id. § 77nnn). Indeed, the specific provision

---

[3]      *Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 521-522 (5th Cir. 2002); *Murungi v. Touro Infirmary*, 2012 U.S. Dist. LEXIS 38804, at *6 (E.D. La. Mar. 20, 2012).

of the statute on which Plaintiffs rely concerns materials that the "obligor upon the indenture securities" must "furnish to the indenture trustee." *Id.* § 77nnn(b).

Plaintiffs are clerks, who record documents that members of the public chose to present to them for recording. Nothing in the TIA—which deals with investors of public securities, trustees of such securities, and issuers of such securities—grants Plaintiffs a right of action to sue for alleged violations of the statute. *See, e.g., Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 433 n.23 (1972) ("we assume, *arguendo*, that the Trust Indenture Act gives a right of action to debenture holders under these circumstances"); *Zeffiro v. First Pennsylvania Banking & Trust Co.*, 623 F.2d 290, 298 (3d Cir. 1980) ("the Trust Indenture Act allows for suits by debenture holders against the trustee for breach of the indenture").

Recognizing this problem, Plaintiffs contend (without citing any authority) that they can maintain this lawsuit because their cause of action is brought under RICO, and so they "need only have authority to sue under that statute." Opposition at 14. However, Defendants showed that where, as here, plaintiffs base a lawsuit on alleged violations of a federal statute which provides for no private right of action, they may not evade Congress's decision not to extend a private right of action by bringing suit under RICO instead. Motion at 10-11 (citing multiple cases). Plaintiffs do not respond to these cases or to Defendants' argument, and have therefore conceded it. *Courtade v. Harrah's Operating Co.*, 2011 U.S. Dist. LEXIS 2106, at *7 (E.D. La. Jan. 10, 2011). Because no private right of action exists, the Court must dismiss the SAC.

**B.    Plaintiffs Lack Power To Sue.**

Defendants also showed that dismissal is independently required because under Louisiana statutes and case law, court clerks have "ministerial" duties only. They lack power to bring litigation except as explicitly authorized, and no such authorization was granted to clerks to sue

-4-

about allegedly non-recorded assignments.  <u>Motion</u> at 9-10.  Plaintiffs do not respond to the

authority Defendants cited, and instead claim that *Cott Index Co. v. Jagneaux*, 685 So.2d 656,

658 (La. App. 1996), recognizes their right to maintain a lawsuit.  <u>Opposition</u> at 15.  Plaintiffs

are incorrect.  *Cott* did not involve a suit brought *by* a clerk but rather one filed *against* a clerk,

and the court stated in no uncertain terms: "[A] clerk of court is a political entity which is

incapable of suing and being sued."  *Id*.  *Cott* thus further demonstrates that Plaintiffs lack

authority to maintain this lawsuit, and it mandates dismissal of the Second Amended Complaint.[4]

## II.  PLAINTIFFS LACK STANDING TO SUE.

### A.  Plaintiffs Suffered No Article III Injury-In-Fact, and So Have No Constitutional Standing to Sue.

Plaintiffs have alleged no constitutional injury as required for Article III standing, and

this case is subject to dismissal on this basis alone.  By statute and case law, Louisiana state

officials may not recover fees for services they have not performed.  Their attempt to recover

fees for assignments never presented for recording is directly contradicted by Louisiana law,

which states that a clerk may only obtain fees "at the time their official services are rendered."

LA. REV. ST. § 13:845; *see also* <u>Motion</u> at 12-13.  Plaintiffs again ignore what the statute and

cases say; they instead present insubstantial responses.

Plaintiffs first argue that they suffered an injury-in-fact because their parishes "would

have received" recording fees had the MERS system not obviated the need to create and record

mortgage assignments, and that the amount they would have received is "a quantifiable measure

of damages for Plaintiffs' injuries."  <u>Opposition</u> at 16.  Defendants did not argue, however, that

Plaintiffs' alleged injury was not "quantifiable."  Defendants argued that Louisiana law bars

---

[4]    *Cott*'s statement that the clerk "is the party to litigation," cited out of context by
Plaintiffs, merely meant that the suit could not proceed against a clerk "as the office holder" to
enforce a contract executed by the predecessor "out-going office holder."  *Id*. at 658-59.

Case 3:12-cv-00220-JJB-SCR   Document 94   09/10/12   Page 5 of 22

Plaintiffs (and other public officials) from recovering fees for services not rendered. To that argument, Plaintiffs have not responded.

Plaintiffs claim that "the injury lies in the lack of recording" and that "Defendants have . . . deprived the Plaintiffs of the opportunity to perform and collect fees for the service of recording." Opposition at 15-16. But being "[d]epriv[ed]" of the "opportunity" to perform government services cannot be an "injury" if there is no Louisiana law that makes such services mandatory. As Defendants demonstrated (Motion at 20-22), the Louisiana recording statutes are entirely permissive—and Plaintiffs do not cite a Louisiana statute or a case to the contrary. Because state law did not require Defendants to record mortgage assignments, Plaintiffs were not deprived of any opportunity to record them or receive the associated recording fees.

Regardless, Plaintiffs' argument that they were "deprived" of an "opportunity" to collect recording fees is foreclosed by the well-established principle that a "lost opportunity" does not constitute an injury that confers RICO standing. *Anderson v. Kutak, Rock & Campbell*, 51 F.3d 518, 523 (5th Cir. 1995).[5] Even if it were legally valid, Plaintiffs' "lost opportunity" theory suffers from the additional fatal defect that it is entirely speculative, because Plaintiffs have not demonstrated that mortgage assignments would have been created and presented to them for recording if their view of the law were adopted. Dismissal is therefore required. *Little v. KPMG LLP*, 575 F.3d 533, 540-41 (5th Cir. 2009) (lost business claim "too speculative to confer Article III standing" where damage theory required multiple levels of uncertain future events); *Fisher v. Halliburton*, 2009 U.S. Dist. LEXIS 117427, at * 23-24 (S.D. Tex. Dec. 17, 2009) (dismissing RICO claim against employer for unearned higher wages; the "claimed injury, the disparity

---

[5] *See also Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) ("Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing."); *In re Taxable Muni. Bond Sec. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995) ("speculative damages are not compensable under RICO").

-6-

between plaintiffs' actual compensation and the theoretical compensation that they would have received," was "too speculative to confer RICO standing under controlling precedent").

### B. Plaintiffs Allege No Injury To "Business Or Property" Under RICO, and So Have No Statutory Standing.

Separately, Plaintiffs lack statutory standing under RICO, and dismissal is required, because under RICO the plaintiff's injury must be one to "business or property," which is limited to "commercial interests or enterprises." *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 264 (1972). Nothing in the Louisiana land recording statutes indicates that indexing land documents was a "commercial endeavor." Motion at 13-15. Citing no statute, and just one case, Plaintiffs contend that they meet RICO's standing requirement because recording mortgages is "a business" that is "of the same type as the business of MERS, a private party." Opposition at 18. That argument is specious.

Plaintiffs do not distinguish or even discuss the Supreme Court's opinion in *Hawaii*, which Defendants relied on in their motion to dismiss and which holds that a governmental entity only suffers an injury to "business or property" when it takes place "in its capacity as a consumer of goods and services." 405 U.S. at 265. A "consumer" is one who receives the good and services from another, and makes a payment in return for receiving the good and services.[6] As clerks of court, Plaintiffs do not pay Defendants (or any other person or creditor) anything. To the contrary, they maintain a repository of documents, and *creditors and others pay Plaintiffs*

---

[6] *See, e.g., CTI Servs., LLC v. Haremza*, 797 F. Supp.2d 1257, 1263 (N.D. Okla. 2011) (consumer is "[a] person who buys goods and services"); BLACK'S LAW DICTIONARY 335 (8th ed. 2004) (same); AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (consumer is "one that acquires good or services for direct use or ownership"), *available at* http://education.yahoo.com/reference/dictionary/entry/consumer.

Case 3:12-cv-00220-JJB-SCR   Document 94   09/10/12   Page 7 of 22

when they chose to record an instrument in the land records. Plaintiffs "consume" nothing and suffered no injury to "business of property" for this reason alone.[7]

Plaintiffs' claim that they have RICO standing because "the business of recording mortgage transfers in which the Plaintiffs engage is of the same type as the business of MERS, a private party" (Opposition at 18) is an unsupported statement divorced from reality. MERS is a private corporation, with shareholders and members, which issues its own rules to govern its operations.[8] A court clerk is a public official whose office exists solely because it was created by the Legislature, and whose powers are circumscribed by statutes the Legislature enacts. MERS is a for-profit business, which makes decisions it believes best advance the interests of its shareholders. Clerks, by contrast, are passive repositories of documents, who record whatever instruments are presented to them for recording,[9] and Plaintiff cite no statute or case indicating that clerks assess fees in order to generate profits. Finally, clerks accept documents for recording, and index the contents, to give notice of liens relating to specific properties;[10] MERS, on the other hand, was created to serve as mortgagee on security instruments on behalf of the beneficial owners of the loan which the instrument secures, and to track transfers of interests in

---

[7] The one case Plaintiffs cite, *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992), reinforces their lack of RICO injury; it held that a foreign sovereign government's actions were "commercial" under the Foreign Sovereign Immunities Act only when they are the "the *type* of actions by which a private party engages in 'trade and traffic or commerce.'"

[8] *See* SAC ¶ 33. MERS' shareholders and members are listed on its web site at http://www.mersinc.com.

[9] "[I]t is not within the discretion of the clerk of court and recorder to determine what acts shall be recorded" but merely to "to record the acts which are presented to him." 1946-48 LA. OP. ATTY. GEN'L 67 (Feb. 5, 1947) (Exhibit 6 to Motion).

[10] *See, e.g., Bacon v. Northwestern Mut. Life Ins. Co.*, 131 U.S. 258, 263 (1889) ("The object of recording the mortgage is to give notice to third persons."); *Miami Nat'l Bank v. Knudsen*, 300 F.2d 289, 294 (5th Cir. 1962) ("The obvious purpose of recording statutes is to provide publicity for the recorded instrument."); *Wright, Williams & Co. v. Trustees of Bank*, 7 La. Ann. 123, 124 (La. 1852) ("The object of the recording of mortgages is to give notice of the incumbrances on real property").

-8-

loan ownership and servicing rights, solely for its members, thereby lowering their transaction costs when loans are bought and sold.[11]

At bottom, what Plaintiffs are complaining about is this: had Defendants chosen to present mortgage assignments for recording, Plaintiffs would have performed their statutorily proscribed ministerial function of recording them. The act of recording and indexing documents is not, however, a commercial function, but rather a government service that the Legislature mandates clerks to undertake. The injury they claim—inability to carry out a governmental function—is not one for which RICO provides a remedy. *See West Hartford v. Operation Rescue*, 915 F.2d 92, 104 (2d Cir. 1990) (injuries to a government's "'ability to carry out its functions'" "fall[] outside the concept of statutory injury to its 'business or property'") (quoting *Hawaii*, 405 U.S. at 265); *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008) ("the term 'business or property' does not readily connote a government's interest in the services it provides in its sovereign or quasi-sovereign capacity").

## III.    THE SAC FAILS TO STATE A COGNIZABLE RICO CLAIM.

In moving to dismiss, Defendants demonstrated at length that Plaintiffs' RICO claim must be dismissed because Louisiana recording law is permissive, and does not mandate recording of mortgage assignments, and thus no fraudulent conduct is alleged. Motion at 19-22. Plaintiffs' decision to abandon Louisiana law, and now to claim instead that the Trust Indenture Act mandates a duty to record (Opposition at 5-12, 15), does not yield a different result.[12]

---

[11]    *See* MERS Frequently Asked Questions, *available at* http://www.mersinc.org/about-us/faq.

[12]    Plaintiffs argue that the Act "appl[ies] to the mortgage-backed securities series issued by Defendants" but provide no analysis why and identify only a handful of such securities, issued by only five of the Defendants. Opposition at 8 & Exhibit F. Defendants cannot respond to such a vague allegation, and will not do so because (as shown above) the TIA does not grant Plaintiffs a private right of action, and because it imposes no duty to record assignments.

Case 3:12-cv-00220-JJB-SCR   Document 94   09/10/12   Page 9 of 22

**A. Plaintiffs Concede Dismissal Of Their Claims To The Extent They Are Based On Loans That Were Not Securitized.**

Plaintiffs argue that the Trust Indenture Act imposes "a duty to perfect and maintain the priority of the mortgages securing the mortgage-backed securities [Defendants] created and sponsored." Opposition at 2; see also SAC ¶¶ 1, 24. The TIA is the sole statutory source for this supposed "duty" cited by the Plaintiffs. *Id.* It follows, then, that even if Plaintiffs' theory that the TIA imposes a duty to record were valid (and it isn't, as Defendants show below), that duty would extend only to loans that "secur[ed] . . . mortgage-backed securities." Plaintiffs have thus abandoned any claim that Defendants had a duty to record any mortgages for loans that were not securitized. Because their complaint is not so limited, claims concerning loans and mortgages that were not involved in a securitization must be dismissed.

**B. There Is No Sufficient Allegation That Fraud Occurred As To Securitized Loans.**

*a. There is no duty to record under the TIA.*

With respect to securitized loans, Plaintiffs have not stated a claim for RICO fraud because the TIA provisions they cite were not violated by any alleged failures to record assignments of the underlying mortgages involved in a securitization.[13] This is true for four independent reasons.

First, the TIA does not require anyone to record anything. To the contrary, the provision cited by Plaintiffs states only:

---

[13] Plaintiffs assert that the TIA requires recordation of "the mortgages securing the mortgage-backed securities." SAC, ¶ 50. Defendants dispute that the TIA applies to every mortgage-backed security, or to every securitized loan; rather, the statute is quite limited in its coverage through a very detailed and exemption-laden series of provisions. 15 U.S.C. § 77ddd. Nonetheless, because the lawsuit would not state a claim even if the TIA were applicable to all securitizations, Defendants (without conceding the applicability of the TIA to the securitizations at issue) do not present further arguments on that issue at this time.

-10-

> If the indenture to be qualified is or is to be secured by the mortgage or pledge of property, the obligor upon the indenture securities shall furnish to the indenture trustee—
>
> (1) promptly after the execution and delivery of the indenture, *an opinion of counsel* (who may be counsel for such obligor) either stating that in the opinion of such counsel the indenture has been properly recorded and filed so as to make effective the lien to be created thereby, and reciting the details of such action, or stating that in the opinion of counsel no such action is necessary; and
>
> (2) at least annually after the execution and delivery of the indenture, *an opinion of counsel* (who may be counsel for such obligor) either stating that in the opinion of counsel such action has been taken with respect to the recording, filing, re-recording, and refilling of the indenture as necessary to maintain the lien of such indenture, and reciting the details of such action, or stating that in the opinion of counsel no such action is necessary to maintain such lien.

15 U.S.C. § 77nnn(b) (emphases added). A mandate that someone deliver "an opinion of counsel" about recordation is not a requirement that documents be recorded. As explained by one court:

> The duty [the Act] imposes is not to actually file the indenture, but merely to furnish an opinion of counsel as to whether the indenture has been properly recorded and filed. This section clearly does not impose a duty on indenture trustees to ensure that liens are perfected for the benefit of the debenture holders.

*Harriet & Henderson Yarns, Inc. v. Castle*, 75 F. Supp. 2d 818, 833 (W.D. Tenn. 1999).

Second, Plaintiffs also cannot rely on the Act because it does not apply to them or benefit them. Instead, the TIA (at most) imposes requirements on the "obligor" of a covered debt security for the benefit of the "indenture trustee." *See id.* ("the duties imposed are for the benefit of the indenture trustee"). Plaintiffs cannot claim they were defrauded because an unnamed "obligor" did not give an unidentified "indenture trustee" an "opinion of counsel."

-11-

Third, Section 777nnn(b) is not referring to the recordation of mortgages underlying securities in any event. Rather, it refers to obtaining an opinion only that "**the indenture** has been properly recorded and filed so as to make effective the lien to be created thereby." 15 U.S.C. § 77nnn(b) (emphasis added). In turn, the term "indenture" is defined to mean any:

> mortgage, deed of trust, trust or other indenture, or similar instrument or agreement (including any supplement or amendment to any of the foregoing), **under which securities are outstanding** or are to be issued, whether or not any property, real or personal, is, or is to be, pledged, mortgaged, assigned, or conveyed thereunder.

15 U.S.C. § 77ccc(7) (emphasis added). The statute plainly is referring to the instrument that grants the holders of debt securities an interest in the loans—the trust indenture "under which securities are outstanding"—and not to the mortgages and deeds of trust that secure repayment of the underlying loans that have been securitized and sold to that trust.

Finally, the TIA provision has not even been violated under Plaintiffs' theory, which is that an opinion that "the indenture has been properly recorded and filed" (15 U.S.C. § 77nnn(b) (1)) requires that the underlying mortgages be recorded. It is undisputed that *mortgages* designating MERS as mortgagee *are* recorded in the parish records; it is only the *assignments* of the underlying notes which are not filed.[14] There is nothing in Section 777nnn(b) that even remotely refers to assignments.

### b. There is no other viable theory of RICO fraud.

Plaintiffs also argue that issuers using MERS violated representations made in prospectuses that "[t]he assignment of each Mortgage will be recorded promptly after the initial issuance of the Certificates for the related Trust Estate unless . . . such recording is not required

---

[14]    SAC ¶¶ 37-39; *see also*, *e.g.*, *Bates v. MERS, Inc.*, 2011 U.S. Dist. LEXIS 29829, at *10-12 (E.D. Cal. Mar. 11, 2011); *Jackson v. MERS, Inc.*, 770 N.W.2d 487, 490 (Minn. 2009).

Case 3:12-cv-00220-JJB-SCR    Document 94    09/10/12    Page 12 of 22

to make the assignment effective." <u>Opposition</u> at 8. This is a bizarre claim in light of Plaintiffs'

concession that the prospectuses explicitly disclose that "with respect to any Mortgage which has

been recorded in the name of [MERS], no mortgage assignment in favor of the Trustee will be

required to be prepared or delivered." <u>Opposition</u> at 8. Even more bizarrely, Plaintiffs cite

Regulation AB, 17 C.F.R. § 229.1107(h), claiming that it "grants the issuer of mortgage-backed

securities the ability to guard themselves against liability by expressly stating in the Prospectus

and Supplement Prospectus that they are under no obligation to see to any recording or filing of

any mortgage or the assignment of any mortgage." <u>Opposition</u> at 11. In other words, Plaintiffs

are arguing that Regulation AB requires issuers either to record mortgage assignments or to

disclose that they will not be recording mortgage assignments. And that is exactly what the

issuer Defendants are alleged to have done, according to Plaintiffs' own allegations: they made

an explicit disclosure that they would not prepare or deliver any assignments of mortgages

registered on MERS. *Id.* at 12. That is because it is typically the case that when MERS is used,

*no mortgage assignments are created*, and thus there are none to record.

 Even without these explicit disclosures in the prospectuses, Plaintiffs' argument would

fail. For one, Plaintiffs are not purchasers of securities, and so lack standing to complain about

alleged misstatements in debt security prospectuses. *Zeffiro*, 623 F.2d at 298. But Plaintiffs are

wrong in any event to argue that Defendants violated any commitments they might have

undertaken to record "documents as are required under applicable law to create [a] perfected

security interest in the Mortgage Property in favor of the Trustee." <u>Opposition</u> at 8 (quoting

Exhibit A at 70-71). Recording MERS mortgages in the parish records *does* create a perfected

security interest in the mortgaged property under Louisiana law. *See* LA. REV. STAT. ANN.

§ 9:5386(A) ("A mortgage of immovable property . . . shall be deemed perfected by the proper

-13-

recordation of the mortgage in the mortgage records of the parish in which the immovable is situated.").

Plaintiffs argue that liens associated with loans registered on MERS are "non-perfected" and that there is an "increased risk of losing the priority of the investment's security interest in the collateral." *Id.* at 11. Both claims are wrong. The first claim confuses *perfection* and *priority.* Liens for MERS-registered loans are perfected because a lien is perfected upon recordation, regardless of priority. LA. REV. STAT. ANN. § 9:5386(A). And in fact there is no risk of the MERS lien losing priority because the security instrument explicitly provides that MERS serves as mortgagee for the initial lender and also for all subsequent lenders who purchase the loan. *See, e.g., Orrill v. MERS, Inc.*, No. 06-10012, 2010 U.S. Dist. LEXIS 72092, at *17 (E.D. La. July 1, 2010) (quoting standard mortgage providing that borrower "does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following property"); *MERS, Inc. v. Daigle*, 10 So. 3d 288, 291 (La. Ct. App. 2009) (same).

### C. The SAC Does Not Plead Facts Alleging An Actionable RICO Enterprise.

The FAC failed to state a claim under RICO because, while Plaintiffs alleged that MERS and the Defendants constituted an association-in-fact enterprise, the alleged enterprise had no existence separate and apart from the alleged acts of racketeering. Motion at 15-18. Plaintiffs now change course, alleging that "the alleged RICO enterprise is MERS" and that "[t]he Defendant banks are then legal entities separate from the MERS enterprise." Opposition at 21. But that change does not help their cause. Regardless whether Plaintiffs believe the enterprise is "MERS" or "Defendants[] together with [MERS]" (*compare* FAC ¶ 64 *with* SAC ¶ 71), neither qualifies as an associated-in-fact enterprise within the meaning of RICO, because neither has an

-14-

existence "separate and apart from the pattern of activity in which [they] engage[]." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

Where a RICO enterprise is alleged to be a legal entity, like MERS, the Fifth Circuit has held that a claim cannot be maintained under § 1962(c) where the alleged predicate acts were committed "in the course of [the enterprise's] regular business." *Parker & Parsley Petrol Co. v. Dresser Indus.*, 972 F.2d 580, 584 (5th Cir. 1992). Accordingly, Plaintiffs must "plead specific facts which establish that the association exists for purposes other than simple to commit the predicate acts." *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). But here, the whole alleged purpose of MERS—according to Plaintiffs' own allegations—was to perform the alleged predicate acts.[15] No other purpose of MERS is alleged. The SAC, like the FAC, thus fails to state a claim for relief under RICO.

**D.      Plaintiffs Fail To Plead Proximate Causation.**

To state a civil RICO claim, Plaintiff are "required to show that a RICO predicate offense 'not only was a "but-for" cause of his injury, but was the proximate cause as well.'" *Hemi Group, LLC v. City of New York*, 130 S. Ct. 983, 989 (quoting *Holmes v. SIPC*, 503 U.S. 258, 268 (1992)); *see* Motion at 29-30. Proximate cause is lacking when "the conduct directly causing the harm was distinct from the conduct giving rise to the fraud." *Id.* at 990. That is exactly the case here. Plaintiffs allege that "the conduct giving rise to the fraud" consisted of Defendants' "misrepresenting the need for recording mortgage assignments." SAC ¶ 34; *see also* SAC ¶¶ 1, 44, 45, 51, 52, 54, 71, 75, 77-81. But it was not these alleged

---

[15]      *See, e.g.*, SAC ¶ 34 ("Since the creation of MERS, Defendant Shareholders have promoted and operated MERS as a scheme to increase their profits in the secondary mortgage market by misrepresenting the need for recording mortgage assignments, thus avoiding the payment of assignment recording fees on the mortgages backing securities issued by Defendant Shareholders and Trustees").

-15-

"misrepresentations" that "directly caus[ed] the [alleged] harm." *Hemi*, 130 S. Ct. at 990.

Rather, Plaintiffs allege that the alleged harm was caused by assignees of promissory notes "not

record[ing]" assignments in the public land records. SAC ¶ 38. The alleged failure to record

assignments in the public land records (the alleged direct cause of the harm) is conduct wholly

distinct from the representations regarding the need for recording mortgage assignments (the

conduct giving rise to the alleged fraud). And not only are these two distinct acts, they are not

even acts by the same parties. Thus, as in *Hemi*, Plaintiffs' "theory of liability rests not just on

separate *actions*, but separate actions carried out by separate parties." *Hemi*, 130 S. Ct. at 990.

Plaintiffs do not even address these defects in their opposition brief, and instead attempt

to distinguish *Hemi* in pure *ipse dixit* fashion by declaring that "Plaintiffs' damages in this case

are the direct result of Defendants' scheme to avoid the recordation of mortgages in mortgage-

backed securities." Opposition at 29. In fact, there is manifestly nothing "direct" about this

result, just as the alleged injury in *Hemi* was fatally indirect. New York City's claim in *Hemi*

that it lost out on tax revenue because a merchant failed to report transactions with its New York

customers, who in turn failed to pay their taxes, is squarely analogous to Plaintiffs' claim that

they lost out on recording fees because Defendants made representations to mortgage investors,

who in turn declined to record mortgage assignments.

Plaintiffs' reliance on *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008), does

not change this analysis. Indeed, the *Hemi* Court specifically distinguished *Bridge* in reaching its

holding that proximate causation is lacking where the conduct causing the harm is distinct from

the conduct constituting fraud:

> [In *Bridge*], [a] losing bidder alleged that a competitor had defrauded the county
> by employing shadow bidders to secure a greater proportion of [tax] liens than it
> was due. We held that the bidder-plaintiff had met RICO's causation
> requirement. . . . [W]e noted that the plaintiff's theory of causation in *Bridge* was

-16-

"straightforward": Because of the zero-sum nature of the auction, and because the county awarded bids on a rotational basis, each time a fraud-induced bid was awarded, a particular legitimate bidder was necessarily passed over. The losing bidders, moreover, "were the *only* parties injured by petitioners' misrepresentations." The county was not; it received the same revenue regardless of which bidder prevailed.

The City's theory in this case is anything but straightforward: Multiple steps, as we have detailed, separate the alleged fraud from the asserted injury. And in contrast to *Bridge*, where there were "no independent factors that account[ed] for [the plaintiff's] injury," here there certainly were: The City's theory of liability rests on the independent actions of third and even fourth parties.

130 S. Ct. at 992. Plaintiffs' claims are squarely analogous to those in *Hemi* and not at all comparable to those in *Bridge*. The plaintiff in *Bridge* was among "the *only* parties" injured by the alleged misrepresentations. Here, Plaintiffs are not even among the parties who can claim injury from the alleged misrepresentations, because Plaintiffs are not purchasers or sellers of securities. The only way Plaintiffs can claim any injury at all is from "the independent actions of third and even fourth parties," which breaks the chain of causation. *Id.* (no causation where "[m]ultiple steps . . . separate the alleged fraud from the asserted injury"). The RICO claim fails.

### E. The SAC Fails To Plead Specific Intent To Defraud.

Dismissal is also required because plaintiffs predicating RICO claims on allegations of mail and wire fraud must plead "specific intent to defraud," and no such facts are alleged. Motion at 22-23 (*quoting Bieganowski*, 313 F.3d at 275). Plaintiffs claim they met this requirement by alleging that MERS was a "scheme," that Defendants "intended harm" from operations of MERS, and that Defendants wanted to "increase their profits." Opposition at 26. But Plaintiffs must plead facts "plausibly suggesting (not merely consistent with)" the intent to defraud, taking into account any "obvious alternative explanation" for the circumstances alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 567 (2007). The SAC fails to meet this standard because Plaintiffs' allegations don't account for the "obvious alternative explanation" that

-17-

Defendants believed that no duty to record mortgage assignments exists under federal or Louisiana law (and Defendants have shown that neither source of law creates such a duty). Conclusory allegations such as repeatedly calling MERS a "scheme" and claiming that Defendants wanted to "increase their profits" do not plausibly suggest an intent to defraud.[16]

**F.    The SAC Fails To Plead Facts Showing The Circumstances Of The Alleged Fraudulent Scheme With Particularity.**

Defendants also showed that the Court should dismiss this lawsuit because Plaintiffs have failed to allege facts in their complaint pleading fraud with particularity as required by Fed. R. Civ. P. 9(b). Motion at 23-24. Plaintiffs admit their pleading is deficient and make no serious attempt to defend it; they instead claim compliance with the Rule by attaching "[a] representative sample" of documents which Defendants mailed to them to be recorded, and which name MERS as nominee. Opposition at 27 & Exhibits G1-13. Plaintiffs miss the point. Their lawsuit alleges that "[t]he Defendant Trustees conspired with the Defendant Shareholders to create the MERS scheme," thereafter "operated and directed the affairs of MERS to enable them to transfer mortgages in a manner designed to unlawfully avoid payment of required recording fees," and "actively concealed the lack of valid assignments from investors." SAC ¶¶ 57, 58, 63. Despite these broad allegations of a widespread conspiracy, the SAC alleges none of the required details about the alleged conspiracy, including what role each Defendant had in the alleged conspiracy, when it began its participation, and how its role changed over time. Attaching copies of filed documents is no substitute for the specific fact allegations about the alleged conspiracy which Rule 9(b) requires. *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th

---

[16] Plaintiffs argue that intent to defraud may be pleaded "general[ly]" and need not comply with "the heightened pleading standards of Fed. R. Civ. P. 9(b)" (Opposition at 25), but this is a non-sequitur because Defendants' argument as to specific intent was based on the basic notice pleading requirements under Rule 8(a) and *Twombly*. Plaintiffs' intent allegations fail to meet those requirements.

-18-

Case 3:12-cv-00220-JJB-SCR   Document 94   09/10/12   Page 18 of 22

Cir. 2010) (plaintiff must plead, "at a minimum," "the 'who, what, when, where, and how' of the alleged fraud"); *Boutain v. Radiator Specialty Co.*, 2011 U.S. Dist. LEXIS 141377, at *7 (E.D. La. Dec. 8, 2011) ("group pleading is impermissible under Rule 9(b)").[17]

### G.    Plaintiffs Concede Dismissal Of The Veil-Piercing Allegations.

Although Plaintiffs seeks to impose liability on certain Defendants based on their status as shareholders of MERS, Defendants demonstrated that they have not come close to meeting the stringent standards required to disregard the corporate form under Delaware law. <u>Motion</u> at 27 n.4. Plaintiffs fail to respond to this argument, and have thus conceded it.

### CONCLUSION

For these reasons, and those set forth in their opening brief, undersigned Defendants respectfully request that the Court dismiss with prejudice all claims against them in the Second Amended Complaint.

Respectfully submitted,

/s/ Kent A. Lambert
Kent A. Lambert (La. Bar. #22458)
Katie L. Dysart (La. Bar #31449)
BAKER DONELSON BEARMAN CALDWELL &
BERKOWITZ, PC
201 St. Charles Ave., Ste. 3600
New Orleans, La. 70170
Tel.: (504) 566-5200
Fax: (504) 636-4000

/s/ Anthony Rollo
Anthony Rollo (La. Bar #1133)
Christine Lipsey (La. Bar #1182)
Kimberly Higginbotham (La. Bar #31779)
MCGLINCHEY STAFFORD, PLLC
Fourteenth Floor, One America Place
Baton Rouge, La. 70825
Tel.: (225) 383-9000
Fax: (225) 343-3076

---

[17]    Plaintiffs' argument that they should be excused from complying with Rule 9(b) because information regarding "each Defendant's role" in making statements "lies within the sole control of Defendants" (<u>Opposition</u> at 28) is belied by the fact that MERS's operations have been the subject of extensive public media scrutiny since the mid-1990s. Multiple courts have dismissed claims alleging failure to record assignments as a result of this public information. <u>Motion</u> at 1 n.1 (citing *Bates v. MERS, Inc.*, 2011 WL 892646 (E.D. Cal. Mar. 11, 2011), *appeal docketed*, No. 11-15894; *Bates v. MERS, Inc.*, No. 2010 CA 002993 (D.C. Super. May 7, 2012); *Bates v. Am. Lending Alliance*, No. 10-1-0160-01 (Haw. Mar. 12, 2012); *Bates v. MERS, Inc.*, No. 49D12-0911-CT-051734 (Ind. June 22, 2012)).

-19-

klambert@bakerdonelson.com
kdysart@bakerdonelson.com

*Attorneys for CitiMortgage, Inc. and*
*Wells Fargo Bank, N.A.*

Thomas M. Hefferon (*pro hac vice*)
Joseph F. Yenouskas  (*pro hac vice*)
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, D.C.  20001
Tel.: 202.346.4000
Fax: 202.346.4444
thefferon@goodwinprocter.com
jyenouskas@goodwinprocter.com

*Attorneys for Bank of New York Mellon,*
*Bank of America, N.A., Merrill Lynch  Credit*
*Corporation, La Salle Bank, N.A., and Wells*
*Fargo Bank, N.A.*

/s/ Monique Lafontaine
Monique Lafontaine
LOCKE LORD LLP
601 Poydras St., Ste. 2660
New Orleans, LA  70130
Tel.: 504-558-5133
Fax: 504-681-5223
mlafontaine@lockelord.com

P. Russell Perdew (*pro hac vice*)
LOCKE LORD LLP
111 South Wacker Dr.
Chicago, Ill.  60606
Tel.: (312) 443-1712
Fax: (312) 896-6712
rperdew@lockelord.com

*Attorneys for U.S. Bank N.A.*

/s/ Michael D. Ferachi
Michael D. Ferachi (La. Bar #19566)
Christine Lipsey (La. Bar #1182)
Fourteenth Floor, One American Place

arollo@mcglinchey.com
clipsey@mcglinchey.com
khigginbotham@mcglinchey.com

*Attorneys for Bank of New York Mellon,*
*Bank of America, N.A., Merrill Lynch  Credit*
*Corporation, and La Salle Bank, N.A.*

/s/ Thomas V. Panoff
Lucia Nale (*pro hac vice*)
Thomas V. Panoff (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Dr.
Chicago, Ill.  60606
Tel.: (312) 701-8821
Fax: (312) 706-8297
lnale@mayerbrown.com
tpanoff@mayerbrown.com

*Attorneys for CitiMortgage, Inc.*

/s/ James S. Wertheim
James S. Wertheim (*pro hac vice*)
MCGLINCHEY STAFFORD, PLLC
2550 Chagrin Boulevard, Ste. 406
Cleveland, Ohio  44122-4640
Tel.: (216) 378-9905
Fax: (216) 378-9910
Email:  jwertheim@mcglinchey.com

Christine Lipsey (LA Bar No. 1182)
Kimberly Higginbotham (LA Bar No. 31779)
MCGLINCHEY STAFFORD, PLLC
Fourteenth Floor, One American Place
Baton Rouge, La.  70825
Tel.: (225) 383-9000
Fax: (225) 343-3076
Email:  clipsey@mcglinchey.com
khigginbotham@mcglinchey.com

*Attorneys for SunTrust Mortgage, Inc.*

/s/ Monique Weiner
Monique Weiner (La. Bar #23233)
Mark Best (La. Bar #29090)
KUCHLER POLK SCHELL WEINER &

-20-

301 Main St.
Baton Rouge, La. 70825
Tel.: (225) 383-9000
Fax: (225) 343-3076
mferachi@mcglinchey.com
clipsey@mcglinchey.com


Of counsel:

Mary Beth Hogan
Dino LaVerghetta
DEBEVOISE & PLIMPTON LLP
919 Third Ave.
New York, N.Y. 10022
Tel.: (212) 909-6996
Fax: (212) 909-6836
mbhogan@debevoise.com
dllaverg@debevoise.com

*Attorneys for Defendant JPMorgan Chase Bank, N.A.*


/s/ Gregory J. Marshall
Gregory J. Marshall (*pro hac vice*)
SNELL & WILMER LLP
One Arizona Center
400 E. Van Buren
Phoenix, Ariz. 85004-2202
Tel.: (602) 382-6514
Fax: (602) 382-6070
gmarshall@swlaw.com


Thomas K. Potter, III (La. Bar #17438)
BURR & FORMAN LLP
700 Two American Center
3102 West End Ave.
Nashville, Tenn. 37203
Tel.: (615) 724-3200
Fax: (615) 724-3290
tpotter@burr.com


Katrina L. Dannheim (La. Bar #33773)
BURR & FORMAN LLP
11 North Water St., Ste. 22200

RICHARDSON, LLC
1615 Poydras St., Ste. 1300
New Orleans, La. 70112
Tel.: (504) 592-0691
Fax: (504) 592-0697
mweiner@kuchlerpolk.com
mbest@kuchlerpolk.com


Of counsel:

Michael H. Carpenter (*pro hac vice*)
Katheryn M. Lloyd (*pro hac vice*)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Ste. 1300
280 North High St.
Columbus, Ohio 43215
Tel.: (614) 365-4100
Fax: (614) 365-9145
carpenter@carpenterlipps.com
lloyd@carpenterlipps.com


*Attorneys for Defendant Nationwide Advantage Mortgage Company*


/s/ Covert J. Geary
Covert J. Geary
JONES WALKER
201 St. Charles Ave.
New Orleans, La. 70170-5100
Tel.: 504.582.8276
Fax: 504.589.8276
cgeary@joneswalker.com


/s/ Elizabeth A. Frohlich
Elizabeth A. Frohlich (*pro hac vice* to be submitted)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, Cal. 94105-1126
Tel.: (415) 442-1000
Fax: (415) 442-1001
efrohlich@morganlewis.com


*Attorneys for Defendant Deutsche Bank AG*

-21-

Mobile, Ala. 36602
Tel.: (251) 345-8234
Fax: (251) 344-9696
kdannheim@burr.com

*Attorneys for HSBC Finance Corporation and
HSBC Bank USA, N.A.*

/s/ V. Thomas Clark, Jr.
V. Thomas Clark, Jr. (La. Bar #20519)
William D. Shea (La. Bar # 29419)
Scott M. Levy (La. Bar #33243)
ADAMS AND REESE, LLP
450 Laurel St., Ste. 1900
Baton Rouge, La. 70801
Tel.: (225) 336-5220
Fax: (225) 336-5220

*Attorneys for United Guaranty Corp.*

Dated: September 10, 2012
LIBW/1840308.13