UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DOUG WELBORN, IN HIS OFFICIAL
CAPACITY AS CLERK OF COURT OF THE
NINETEENTH JUDICIAL DISTRICT FOR
THE PARISH OF EAST BATON ROUGE,
LOUISIANA, ET AL

CIVIL ACTION

VERSUS

NO. 12-220-JJB

THE BANK OF NEW YORK MELLON, ET AL

## RULING ON MOTION TO DISMISS SECOND AMENDED COMPLAINT

This matter is before the Court on a Motion to Dismiss Plaintiffs' Second Amended

Complaint pursuant Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6) (Doc. 69),

filed by Defendants The Bank of New York Mellon, Bank of America, N.A., CitiMortgage, Inc.,

Merrill Lynch Credit Corp., Nationwide Advantage Mortgage Co., SunTrust Mortgage, Inc.,

Wells Fargo Bank, N.A., Deutsche Bank AG, U.S. Bank N.A., HSBC Finance Corporation,

HSBC Bank USA, N.A., JPMorgan Chase Bank, N.A., United Guaranty Corporation, and La

Salle Bank, N.A ("the Defendants").[1]  The Defendants' Motion is styled as a "Motion to Dismiss

First Amended Complaint," but the Plaintiffs subsequently filed a Second Amended Complaint

("Complaint") (Doc. 90), and the parties stipulated (Doc. 89) that the Motion to Dismiss First

Amended Complaint shall be considered a Motion to Dismiss Plaintiffs' Second Amended

Complaint, and it will be addressed as such.  The Motion is opposed (Docs. 76 and 77), the

Defendants have filed a reply (Doc. 94) and supplemental authorities (Doc. 100), the Plaintiffs

have filed a sur-reply (Doc. 113), and the Defendants have moved to submit a response to

---

[1] GMAC Residential Funding Corporation is listed as a Defendant in the Plaintiffs' first Complaint (Doc. 1).
GMAC Residential Funding Corporation is engaged in bankruptcy proceedings in the United States Bankruptcy
Court for the Southern District of New York, in which an automatic stay has been granted (Doc. 25).  The Plaintiffs'
Second Amended Complaint (Doc. 90) does not include GMAC Residential Funding Corporation as a Defendant, so
they are no longer a party to this litigation and the automatic stay against this party has no bearing on these
proceedings.

Plaintiffs' sur-reply (Doc. 114).   The Court has considered this response (Doc. 114-2) in addressing the Motion to Dismiss.   Oral argument is unnecessary.   This Court has jurisdiction under Title 28 Section 1331 and Title 18 Section 1965(a).

## I.    Facts

This suit is an action under the Racketeer Influenced and Corrupt Organizations Act, Title 18 Section 1961 *et seq.* ("RICO"), by the Clerks of Court of forty-seven Louisiana parishes against fourteen financial institutions.   The suit alleges that the Plaintiffs have been injured by their loss of recording fee revenue by reason of the conduct of the Defendants' affairs through a pattern of acts indictable as mail and/or wire fraud related to Mortgage Electronic Registration Systems, Inc. and MERSCORP, Inc. (collectively "MERS").

The following facts come from the Plaintiff's Second Amended Complaint (Doc. 90) and are accepted as true for purposes of this motion.   *Bass v. Stryker Corp.*, 669 F.3d 501, 507 (5th Cir. 2012).   MERS is a private corporation acting as a private national electronic registry that supposedly tracks interests and servicing rights in mortgage loans.   Mortgage lenders and other entities, known as "MERS members," subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages.   Specifically, under MERS, when a member of MERS originates a mortgage, the mortgage is recorded in MERS' name, as nominee and mortgagee for members' successors and assignees.   MERS members retain the note and servicing rights to the mortgage, and whenever a MERS member sells or transfers its interest in a mortgage loan to another MERS member, MERS privately tracks the assignment within its system.   As long as the sale or transfer is to another MERS member, MERS represents that they are the nominee for the new beneficial owner and that an assignment of the mortgage does not need to be recorded in the public land records in order to protect the

priority of the mortgage lien. Based on this representation, assignments are not recorded in the public land records and MERS members avoid paying recording fees to the Plaintiffs, whose duty it is to record mortgage assignments, no matter how many times notes are transferred.

The Plaintiffs claim that the Defendants are shareholders of MERS and have, since MERS' creation, promoted and operated MERS as a scheme in the secondary mortgage markets by misrepresenting the need for recording mortgage assignments, thereby avoiding the payment of assignment recording fees on the mortgages backing securities issued by the Defendant shareholders and trustees to the public.  The Plaintiffs claim that federal laws, specifically the Trust Indenture Act of 1939, gave the Defendants a duty to perfect and maintain the priority of the mortgages securing the mortgage-backed securities that they have issued to the public, and that this duty required the Defendants to properly record each mortgage and any subsequent conveyance of that mortgage in order to maintain priority of the lien under the Louisiana Public Records Doctrine.  The Plaintiffs seek, among other things, a permanent injunction requiring the Defendants to record, in the Plaintiffs' records, each mortgage and mortgage assignment necessary to perfect and maintain the priority of the mortgages securing their mortgage-backed securities, and to recover damages suffered as a result of the MERS scheme under Title 18 Section 1964(c) of RICO.  The Defendants argue that the lawsuit should be dismissed since the Plaintiffs have no right to sue, the Plaintiffs lack constitutional and statutory standing, and because the complaint fails to state a claim under RICO.

II.      Motion to Dismiss Standards

For purposes of this Motion, the Court accepts all well-pleaded, non-conclusory facts in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face." *Id.* at 678.  When well-pleaded factual allegations populate the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## III.    Analysis

The Defendants' first argument for dismissal is that Plaintiffs do not have the right sue. They argue that the Louisiana Legislature did not grant the Plaintiffs a private right of action to sue for the alleged violation of land recording statutes, and that the Plaintiffs may not bring suit under RICO to "make an end-run" around not having a private right of action.  The Defendants also claim that the Trust Indenture Act of 1939 ("TIA") does not create a private right of action for the Plaintiffs, and that the Plaintiffs are prohibited from suing under RICO since they cannot sue under the TIA.

Addressing the Defendants' argument that they do not have the right to sue under the Louisiana land recording statutes, the Plaintiffs assert that they make no such claim.  They state that they "are not alleging that Louisiana law affirmatively creates a duty to record the assignments of mortgages."  Doc. 77, at 4.  The Court agrees.  The Plaintiffs' Complaint asserts that the "duty to perfect and maintain the priority of the mortgages securing the mortgage-backed securities that they created and sponsored" arises from federal laws.  Doc. 90, at 29.  As the Plaintiffs do not base their claims on or bring suit under the Louisiana land recording statutes, the Court need not address whether these laws afford them the right to sue.

The Court next addresses the Defendants' arguments regarding the right to sue under federal law and the TIA. The Defendants assert the Plaintiffs have no private right of action under federal law, that the Plaintiffs do not satisfy their burden in demonstrating that the lawsuit grants them a private right of action, and that the Plaintiffs may not evade Congress's decision

not to extend them a private right of action by bringing suit under RICO instead.  The Plaintiffs claim that they "are not suing to enforce . . . the TIA, or securities filings," and they therefore do not need to demonstrate any private cause of action under anything other than RICO.  Despite this argument, the Court finds otherwise.

The Complaint states with certainty that the Plaintiffs seek to enforce the TIA.  The Complaint provides that, "[u]nder Federal laws, the Defendants had a duty to perfect and maintain the priority of the mortgages securing the mortgage-backed securities that they created and sponsored."  Doc. 90, at 29.  The Plaintiffs' Opposition also includes a statement that the "Plaintiffs allege that Defendants had a duty under Federal law to perfect and maintain the priority of the mortgages securing the mortgage-backed securities they created and sponsored."  Doc. 77, at 5.  The only law that the Plaintiffs reference as creating this duty is the TIA.[2]  "[T]he plaintiff has the relatively heavy burden to show Congress intended private enforcement, and must overcome the presumption that Congress did not intend to create a private cause of action."  *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006).  The Plaintiffs do not argue, much less establish, that the TIA creates a private right of action for them.  The Court therefore finds that the Plaintiffs do not have a private right of action under the TIA.[3]  Whether the Plaintiffs have a right to sue therefore turns on whether the Plaintiffs may use RICO to enforce the TIA.

"Congress enacted the Trust Indenture Act in response to reports of mismanagement of corporate debt securities by trustees of the securities who furthered management interests at the expense of investors."  Guy P. Lander, Statutes—Trust Indenture Act of 1939 (Trust Indenture

---

[2] The Plaintiffs also mention Regulation AB in the Complaint.  They do not, however, assert that it creates this duty.  Rather, in their opposition, the Plaintiffs explain that Regulation AB "grants the issuer of mortgage-backed securities the ability to guard themselves against liability by expressly stating in the Prospectus and Supplement Prospectus that they are under no obligation to see to any recording or filing of any mortgage or the assignment of any mortgage; however, it also requires that the issuer disclose that it will not be perfecting and assuring the lien priority of the mortgages securing the investment."  Doc. 77, at 11.

[3] The Court solely finds that the Plaintiffs do not have a private right of action, not that the TIA does not provide a private right of action for anyone.

Act), 14 U.S. Securities Law for International Financial Transactions and Capital Markets § 1:6 (2d ed. 2012). The TIA "was designed to correct certain defects which had existed in trust indentures and to provide means whereby the rights and interests of security holders can be more effectively safeguarded." 1944 SEC Ann. Rep. 185. The Securities and Exchange Commission ("SEC") is granted the power to enforce the TIA. 15 U.S.C. § 77uuu(a).

The United States Courts of Appeals for the Second, Eleventh, and District of Columbia Circuits, and the United States District Court for the Northern District of Georgia, have found that certain purported statutory violations pled in RICO terms cannot form the basis for a civil RICO claim. *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1227 (11th Cir. 2002); *Danielsen v. Burnside–Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1226–27 (D.C. Cir. 1991); *Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634, 637–38 (2d Cir. 1989); *Brown v. First Tennessee Bank Nat. Ass'n*, 753 F. Supp. 2d 1249, 1263 (N.D. Ga. Nov. 20, 2009). The Plaintiffs claim that these cases are not applicable to the instant case, arguing that the cases only apply to situations in which an alternate and exclusive statutory remedy exists. These cases, however, are similar to the instant case, and the Court finds them persuasive and is guided by their logic.

*McCulloch v. PNC Bank Inc.* dealt with a RICO claim based on a duty under the Higher Education Act of 1965, as amended, 20 U.S.C. § 1071 et seq. ("HEA"). 298 F.3d 1219–20. The HEA did not include a private right of action, instead providing administrative remedies for the Secretary of Education to monitor and sanction non-compliance with the statute. *Id.* at 1226. The court found that "in light of the HEA's enforcement scheme, granting the Secretary of Education exclusive authority to remedy violations of the HEA, and the fact that the HEA does not confer a private right of action, . . . [violation of a duty under the HEA] cannot form the basis for a civil RICO claim." *Id.* at 1227.

*Danielsen v. Burnside–Ott Aviation Training Ctr., Inc.* involved a RICO suit in which the facts alleged fell within the Service Contract Act, 41 U.S.C. § 351 ("SCA").  941 F.2d at 1224. The Court stated that an extensive body of regulations promulgated by the Secretary of Labor applied to the SCA and described an administrative procedure under the statute.  *Id.* at 1223. *Danielsen* found that the SCA did not include a private right of action.  *Id.* at 1228.  It concluded that "the statutory scheme for administrative relief set forth by Congress in the SCA leaves no room for a RICO action."  *Id.* at 1226.

In *Norman v. Niagara Mohawk Power Corp.*, the plaintiffs brought a RICO claim composed of allegations within the confines of the Energy Reorganization Act of 1974 ("ERA"), 42 U.S.C. § 5801 et seq.  873 F.2d at 635–38.  *Norman* found the administrative remedies provided by the ERA to be exclusively vested in the Secretary of Labor.  *Id.* at 637.  It followed by concluding that "[a]rtful invocation of controversial civil RICO . . . cannot conceal the reality that the gravamen of the complaint" was an ERA claim exclusively covered by the statute.  *Id.* at 637–38.

*Brown v. First Tennessee Bank Nat. Ass'n* involved a RICO claim premised on a violation of Department of Veterans Affairs Regulations ("VA regulations").  753 F. Supp. 2d at 1251–52.  As the most recent case in this area, *Brown* entertained guidance from *McCulloch*, *Danielsen*, and *Norman*.  *Id.* at 1257–63.  *Brown* decided that the VA regulations included no private right of action, and that the regulations included extensive administrative remedies.  *Id.* The Court found that allegations of noncompliance pervaded the plaintiff's complaint, and at its core, the suit was "an attempt to use a fraud-predicated civil RICO claim to enforce regulatory provisions."  *Id.* at 1260.  In order to determine if mail or wire fraud existed per RICO, the Court would have had to decide if a violation of the VA regulations occurred.  *Id.* at 1261–62.  Brown

decided this would "encroach upon the Secretary of Veterans Affairs'[] congressionally delegated authority to enforce the [VA] regulations." *Id.* at 1262.  Based on the lack of a private right of action and the extensive administrative regime, the Court concluded that "[i]t is inconsistent with the legislative intent to permit Mr. Brown to bring a class action RICO suit that seeks to enforce the VA regulations." *Id.* at 1263.

Each of these cases addressed statutes with administrative remedies.  *McCulloch*, 298 F.3d at 1221; *Danielsen*, 941 F.2d at 1223; *Norman*, 873 F.2d at 637; *Brown*, 753 F. Supp. 2d at 1256–57.  The remedial schemes all included or were wholly made up of regulations governing statutory enforcement.  *McCulloch*, 298 F.3d at 1227; *Danielsen*, 941 F.2d at 1223; *Norman*, 873 F.2d at 637; *Brown*, 753 F. Supp. 2d at 1256–57, 1261–62.  The TIA likewise includes an administrative scheme to deal with violations.  The TIA's scheme focuses on enforcement.  This scheme provides that "the [Securities and Exchange] Commission shall have the powers with respect to investigations and hearings, and with respect to the enforcement of, and offenses and violations under, this title and rules and regulations and orders prescribed under the authority thereof, provided in sections 20, 22(b), and 22(c) of the Securities Act of 1933." *Id.*  The referenced provisions of the Securities Act of 1933 detail the ability of the SEC to investigate, enjoin, and promote prosecution for violations of the TIA.  15 U.S.C. §§ 77t & 77v(b), (c).

The principles of *McCulloch*, *Danielsen*, *Norman*, and *Brown* apply here since the situations are similar.  As in those cases, the gravamen of the Plaintiffs' complaint is violation of a regulatory statute which provides them no private right of action, but includes a regulatory scheme to deal with violations.  The instant case differs slightly since the administrative remedies in the TIA are not exclusive.  However, Congress would not have intended the Plaintiffs to enforce the TIA through RICO using the present allegations, when they were not

8

granted a private right of action through the statute, and when the SEC was expressly granted the right of enforcement.  Were this Court to make the necessary determination under RICO of whether mail or wire fraud exists, it would have to determine whether the Defendants have violated the TIA.  *See Brown*, 753 F. Supp. 2d at 1261–62 (evaluating similar hypothetical).  By undertaking such an analysis, this Court would encroach upon the Security and Exchange Commission's congressionally delegated authority to enforce the TIA.  As with the cases mentioned above, "once all the fat is trimmed away, we are left with little more than allegations that" the Defendants violated the TIA.  *Id.* at 1263.  Accordingly, based on the lack of a private right of action for the Plaintiffs, and the administrative scheme of enforcement created by the TIA, it is inconsistent with legislative intent to allow the Plaintiffs to bring a RICO claim which seeks to enforce the TIA.

IV.    Conclusion

Accordingly, Defendants' Motion for Leave to File Response to Plaintiffs' Sur-Reply Brief (Doc. 114) is **GRANTED** and Defendants' Motion to Dismiss (Doc. 69) is **GRANTED**. Plaintiffs' Motion for Oral Argument (Doc. 118) is **DENIED AS MOOT**.

Signed in Baton Rouge, Louisiana, on January 14, 2013.

_____

**JAMES J. BRADY, DISTRICT JUDGE**