UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF LOUISIANA
BATON ROUGE DIVISION

| | |
|---|---|
| DOUG WELBORN *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE BANK OF NEW YORK MELLON *et al.*, <br><br> Defendants. | Civ. A. No. 3:12-CV-220 |

DEFENDANTS' RESPONSE TO PLAINTIFFS'
SUR-REPLY BRIEF TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

The arguments in Plaintiffs' Sur-Reply brief do nothing to avert dismissal.

No Private Cause of Action: Defendants demonstrated that the Court should dismiss this lawsuit because the Louisiana legislature granted Plaintiff no private right of action to enforce Louisiana statutes concerning recording of mortgages and assignments, and because Congress granted them no such right of action under the Trust Indenture Act ("TIA"). Memorandum Of Law In Support Of Defendants' Motion To Dismiss First Amended Complaint (July 20, 2012) ("Motion") at 7-11; Reply Brief In Support Of Defendants' Joint Motion To Dismiss (Sept. 10, 2012) ("Reply") at 2-5. Plaintiffs concede they have no private right of action under state law or the TIA, and so they are left to claim that they "are not suing to enforce state law recording statutes, the TIA or securities filings." Plaintiffs' Sur-Reply Brief To Defendants' Motion To Dismiss First Amended Complaint (Oct. 29, 2012) ("Sur-Reply") at 2. The claim is demonstrably false.

Plaintiffs' Second Amended Complaint alleges that Defendants were required to "properly record each mortgage and any subsequent conveyance of that mortgage . . . under the Louisiana Public Records Doctrine," and that "[u]nder Federal laws, the Defendants had a duty to perfect and maintain the priority of mortgages securing the mortgage-backed securities that they created." SAC ¶¶ 42, 50. Likewise, in opposing Defendants' motion to dismiss, Plaintiffs argued that "the duty [to record] comes from a Federal statute and/or representations made pursuant to Federal law." Memorandum Of Law In Support Of Plaintiffs' Response To Defendants' Motion To Dismiss First Amended Complaint (Aug. 10, 2012) ("Opposition") at 15. And Plaintiffs maintain in their Sur-Reply (at 9) that "[t]he TIA" imposes an "obligation[]" to create and record "mortgage assignments."

These arguments make clear that Plaintiffs *are* suing to enforce alleged violations of state and federal law. And the case law holds that, where a party files a lawsuit trying to enforce statutes that lack a private right of action, it cannot assert a claim under RICO to end-run the legislative choices not to grant it a remedy under the statutes. Motion at 10-11; Reply at 4. The Court should dismiss the SAC for this reason alone.[1]

No Authority To Sue. Defendants also showed that dismissal is required because clerks have ministerial duties under Louisiana law, and lack authority to file lawsuits to enforce

---

[1] Plaintiffs claim that Defendants' cases apply only when an exclusive administrative remedy exists. Sur-Reply at 2. That is incorrect. While cases such as *Ayres* pointed to a scheme for administrative remedies in finding that "Congress did not intend" for the alleged statutory violation "to be the basis for a private civil RICO action," that was not the only factor, and *Ayres* also cited "the absence of a private right of action," which is precisely the case here. *Ayres v. GMC*, 234 F.3d 514, 522 (11th Cir. 2000). It would be absurd to suggest that Congress's decision to give some plaintiffs a limited administrative remedy is sufficient to foreclose a claim under RICO while its decision to give a class of plaintiffs *no right of action at all* under a different statute should allow them to import the entire civil RICO remedial scheme. If Congress intended to allow Plaintiffs a right of action to enforce the TIA, it would have done so expressly.

perceived violations of Louisiana or federal law. Motion to Dismiss at 9-10; Reply at 4-5. Plaintiffs' sole response is to argue that they have authority to file suit "to preserve the integrity of the records they are charged with maintaining." Sur-Reply at 4 (citing *State v. Daniel*, 903 So.2d 644 (La. Ct. App. 2d Cir. 2005)). But this case has nothing to do with ***preserving*** records. To the contrary, Plaintiffs claim that federal law requires Defendants to record documents, and they ask the Court to enter a permanent injunction to compel Defendants ***to file records***,[2] and ***to award damages to Plaintiffs*** to which they believe they are entitled ***to enforce their view of the law***.[3] Clerks do not possess authority to take those actions under Louisiana law.[4] The case should be dismissed for this additional reason.[5]

No Injury In Fact. The Constitutional requirement of an injury-in-fact means that Plaintiffs must plead a "concrete and particularized" injury that is not "conjectural," "hypothetical," or "speculative." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Furthermore, the case law in this Circuit is clear that "lost opportunity" damages are not an injury in fact. *Anderson v. Kutak, Rock & Campbell*, 51 F.3d 518, 523 (5th Cir. 1995); *Price v.*

---

[2] SAC ¶ 84 (requesting injunction "requiring defendants to record in the Plaintiffs' records, each mortgage and mortgage assignment").

[3] SAC ¶¶ 82, 83 (demanding treble damages for "loss of recording fee revenue that they would have received had the Defendants not . . . unlawfully avoided payment of the recording fees" they believe should have been paid).

[4] 1946-48 La. Op. Atty. Gen'l 67 (Feb. 5, 1947) (Motion Exhibit 6) ("[I]t is not within the discretion of the clerk of court and recorder to determine what acts shall be recorded," but merely "to record the acts which are presented to him"); *State v. Jackson*, 935 So. 2d 319, 322 (La. Ct. App. 2006) ("The duty of a custodian of public records to preserve the records and insure that no one alters or destroys them does not give the custodian a real and actual interest in judicial proceedings not addressing the custodian's record-keeping duties, but instead addressing legal issues that have the effect of creating, changing, or invalidating items that fall under the definition of public records").

[5] Plaintiffs continue to rely on a statement in *Cott Index Co. v. Jagneaux*, 685 So. 2d 656, 658 (La. Ct. App. 1996), that the clerk "is the party to litigation" -- but the clerk in *Cott* was the *defendant*, not the plaintiff, and thus the court never held the clerk had power to file suit.

*Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998 ("Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing."); *In re Taxable Muni. Bond Sec. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995) ("speculative damages are not compensable under RICO"). Plaintiffs' Sur-Reply makes no mention of *Price* or *Taxable Muni. Bond* but makes a weak effort to "distinguish[]" *Anderson* by arguing that "Defendants do not allege that Plaintiffs' injury is not quantifiable, distinguishing it from the speculative *Anderson* injury." Sur-Reply at 6. Plaintiffs miss the point. They believe that, if their view of the law were adopted, MERS members would have created mortgage assignments and recorded them in land records, entitling them to recording fees. But this argument is inherently speculative, because MERS members may have decided to adopt any number of other, permissible legal arrangements if the law were as Plaintiffs suggest. Plaintiffs' damage theory thus remains entirely contingent and hypothetical, and so their supposed lost opportunity costs do not qualify as injury under RICO.

<u>No Injury to Business or Property</u>. Not every claimed injury confers standing under RICO; only injuries to "business or property" are sufficient. Motion at 13-15; Reply at 7-9. So desperate are Plaintiffs to find an injury to "business or property" that they attempt to characterize the land recording system they administer as a "business in the manner of a private actor," claim that "Plaintiffs' business of recording" has a "commercial nature," and even state that the clerk's offices are "profitable." Sur-Reply at 6.

Plaintiffs are incorrect on the facts and law. Plaintiffs are not engaging in "trade and traffic or commerce" when they maintain municipal land records. *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). They are performing a *public* service, because legislatures pass land-recording statutes so that creditors can give notice *to the public* of

Case 3:12-cv-00220-JJB-SCR   Document 120   01/14/13   Page 4 of 12

encumbrances on real property and protect their secured status.[6] As noted above, under Louisiana law the clerk has a ministerial duty to accept and record those documents which are presented to it for recording. That a clerk is not engaged in a "business" is clear from the simple fact that, if a creditor decides not to present a document for recording, the clerk cannot do anything with respect to the document.

Plaintiffs also argue that their claimed injury satisfies the "business or property" requirement because it amounts to "lost tax revenue." Sur-Reply at 7. But the only authority Plaintiffs cite for that theory is the ***dissenting*** opinion in *Hemi Group, LLC v. City of New York*, 130 S. Ct. 983 (2010), and the lower court opinion ***reversed*** by Hemi. Because lost tax revenue is not something a government suffers "in its capacity as a consumer of goods and services," it does not qualify as "business or property" under binding Supreme Court precedent. *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 264 (1972).

<u>No Duty to Record – Trust Indenture Act</u>. Defendants showed that the TIA does not impose a duty to record mortgage assignments for multiple reasons. Reply at 10-12. Plaintiffs fail entirely to rebut those arguments.

The plain language of the TIA requires only the delivery of an opinion of counsel, and does not mandate recording assignments or any other document.:

> [T]he obligor upon the indenture securities shall furnish to the indenture trustee . . . an opinion of counsel . . . either stating that in the opinion of such counsel the indenture has been properly recorded . . . , or stating that in the opinion of counsel no such action is necessary.

---

[6] *Miami Nat'l Bank v. Knudsen*, 300 F.2d 289, 294 (5th Cir. 1962) ("The obvious purpose of recording statutes is to provide publicity for the recorded instrument"); *Wright, Williams & Co. v. Trustees of Bank*, 7 La. Ann. 123, 124 (La. 1852) ("The object of the recording of mortgages is to give notice of the incumbrances on real property").

-4-

Case 3:12-cv-00220-JJB-SCR   Document 120   01/14/13   Page 5 of 12

15 U.S.C. § 77nnn(b). Plaintiffs' sole response is to argue that an issuer could incur liability under the statute "if it misrepresented that the mortgages and assignments had been recorded when they are that assignments had not been recorded." Sur-Reply at 12. The argument is baseless, because the provision they cite (Section 325 of the TIA) does not contain *any* duty to record assignments, just remedies if a statutory provision is breached. And Plaintiffs have nowhere identified any misrepresentations that assignments would be recorded for MERS mortgages—and they in fact quote a disclosure in the prospectuses that "with respect to any Mortgage which has been recorded in the name of [MERS], no mortgage assignment in favor of the Trustee will be required to be prepared or delivered." Opposition at 8.[7]

Plaintiffs have not pointed -- and cannot point -- to any duty to record contained in the TIA, and the Court should dismiss the SAC on this fundamental ground alone. But Plaintiffs also cannot show they were defrauded,[8] they fail to demonstrate that the TIA applies,[9] and they fail even to show a violation occurred.[10] Dismissal is required for these reasons as well.

---

[7] *Harriet & Henderson Yarns, Inc. v. Castle*, 75 F. Supp. 2d 818, 833 (W.D. Tenn. 1999) ("The duty [the Act] imposes is not to actually file the indenture, but merely to furnish an opinion of counsel as to whether the indenture has been properly recorded and filed. This section clearly does not impose a duty on indenture trustees to ensure that liens are perfected for the benefit of the debenture holders."). Plaintiffs protest that this quote from *Harriet* is taken "out of context," but they do not cite any additional context that changes the fundamental holding of *Harriet*—which Plaintiffs have, in any event, *conceded*—that the TIA imposes no recording requirement, only a requirement to deliver an opinion of counsel. Plaintiffs further argue that "*Harriet* does not address the legal ramifications if the obligor were to make material misrepresentations in its filings to the trustee regarding whether the liens were properly recorded," but this is beside the point because Plaintiffs do not identify any such misrepresentations. Sur-Reply at 12.

[8] The Act imposes requirements only on the "obligor" of a covered debt security for the benefit of the "indenture trustee"; Plaintiffs cannot claim they were defrauded because an unnamed "obligor" did not give an "indentured trustee" an "opinion of counsel." Reply at 11. Plaintiffs fail to respond to this argument, and have conceded it.

[9] The TIA requires that an "indenture" be recorded, and that term is defined to mean the document "under which securities are outstanding," and so does not apply to mortgages. Reply

<u>No Duty to Record – Prospectuses</u>.  Defendants also demonstrated that no RICO fraud can arise from alleged misrepresentations in mortgage-backed securities prospectuses for multiple reasons.  Reply at 12-14.  Most significantly, no fraud and no misrepresentation occurred because *Plaintiffs admit that the prospectuses explicitly disclose that for MERS loans "no mortgage assignment in favor of the Trustee will be required to be prepared or delivered."*  Reply at 12 (quoting Opposition at 8).  Plaintiffs have no legal argument to make, so instead they ask "why would investors allow such a caveat when losing priority on the mortgage liens would eliminate the security that is the key benefit of a mortgage-backed security ?"  Sur-Reply at 14.  First, this question posed by Plaintiff is not an allegation or showing that any false statement was made, and do does not save their case from dismissal.  But the answer to the question is simple.  MERS is listed on the security instrument not only as the mortgagee for the original lender, and but also *for the lender's successors and assigns*.  Thus, when a loan secured by a mortgage designating MERS as mortgagee is transferred, it is not necessary to "re-record" the underlying mortgage (as Plaintiffs suggest), because MERS continues to hold the mortgage as the agent for the assignee, thus maintaining the priority of the lien against subsequent liens.  Indeed, Judge Bennett of the United States District Court for the Northern District of Iowa just rejected the identical argument made by a county making similar claims about recording fees as this one:

---

at 12 (quoting 12 U.S.C. § 77ccc(7)).  Plaintiffs try to argue that mortgages are indentures by citing *Black's Law Dictionary* for its definition of "indenture" (Sur-Reply at 10)—but parties may not, of course, resort to dictionary definitions when Congress has already defined a statutory term.  They accordingly fail to carry their burden of showing the TIA applies.

[10]     The TIA was not violated, even under Plaintiffs' theory that the TIA requires recording of mortgages, because it is undisputed that initial mortgages *are* recorded for MERS-registered loans.  Plaintiffs' reading of the statute cannot be supported, because even under Plaintiffs' proposed definition of "indenture," the statute would refer only to the re-recording or re-filing of the indenture/mortgage itself—but an assignment of a mortgage is not the same thing as the re-recording of a mortgage.

-6-

> *[D]espite unrecorded assignments*, a mortgage would retain its
> first-lien status, unless it was released and there was a subsequent
> purchase for value without notice. Thus, as long as MERS
> remained the mortgagee of record, by virtue of the initial
> recording, and did not release the mortgage, *there could be no
> subsequent purchase for value without notice*. . . . [T]he lack of
> recording of interim assignments did not change the first-lien
> status of the recorded mortgage as a matter of law."

*Plymouth County, Iowa v. MERSCORP, Inc.*, 2012 WL 4903099 at * 17 (N.D. Iowa Oct. 16, 2012).

Defendants also argued that Plaintiffs' reliance on prospectuses fails because (1) they are not purchasers of securities, and thus lack standing to sue about alleged misrepresentations in prospectuses; and (2) recording mortgages with parish clerks did create a perfected security interest in the mortgages under Louisiana law. Reply at 13-14. Plaintiffs ignore the first argument, and their only response to the second is to claim that mortgage assignments must be recorded to ensure that the original mortgages are perfected (Sur-Reply at 14), an argument which Defendants showed above is meritless. These arguments also mandate dismissal.

<u>No RICO Enterprise</u>. Plaintiffs cannot state a claim under RICO because they do not plead the existence of a RICO "enterprise," defined as an organization with "an existence separate and apart from the pattern of racketeering." *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir. 1988); *see* Motion at 15-18; Reply at 14-15. Plaintiffs argue, incorrectly, that all they need to establish is that MERS is "a legal entity" with "a legal existence." Sur-Reply at 15. While it is true that a legal entity *can* be a RICO enterprise, 18 U.S.C. § 1961(4) (defining "enterprise" as including "any individual, partnership, corporation, association, or other alleged legal entity, and any union or group of individuals associated in fact although not a legal entity"), that is not what Plaintiffs have alleged in *this* case. Plaintiffs' Second Amended Complaint clearly states that Plaintiffs are *not* alleging a "legal entity"

enterprise but are instead alleging an "associated in fact" enterprise. SAC ¶ 71 (alleging that "all Defendants, together with Mortgage Electronic Registration Systems, Inc. and MERSCORP, Inc., constitute an association-in-fact 'enterprise' (the 'MERS Enterprise') as that term is defined in 18 U.S.C. § 1964(4)"). The "legal existence" of MERS is thus irrelevant.[11]

No Proximate Causation. Proximate cause is lacking where a "theory of liability rests not just on separate *actions*, but separate actions carried out by separate parties." *Hemi*, 130 S. Ct. at 990. That is the precisely the case here: Plaintiffs argue that their injury resulted from MERS maintaining an electronic registry, which resulted in Defendants using that registry and making representations about its effectiveness, which resulted in other unnamed parties electing not to create or record mortgage assignments, which resulted in Plaintiffs not receiving recording fees. Proximate causation under RICO does not exist in these circumstances.[12]

Plaintiffs are not in a position comparable to the plaintiff in *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), *see* Reply at 16-17, as Plaintiffs confirm in their Sur-Reply when they acknowledge that *Bridge* stands merely for the proposition that third-party reliance does not foreclose a RICO claim when a plaintiff is "directly injured by a fraudulent misrepresentation." 553 U.S. at 656-57. Indeed, *Bridge* only found proximate causation because "there were no independent factors that account[ed] for [the plaintiff's] injury." *Id*. at 658. Here, Plaintiffs' alleged injury depends on a number of independent factors, including the actions of third parties.

---

[11]     As Defendants have shown, attempting to re-define the enterprise as MERS itself but *not* the Defendants, as Plaintiffs attempt to do in their Opposition (at 21) and in again their Sur-Reply (at 15), does not lead to a different result. *See* Reply at 14-15.

[12]     *See In re Oil Spill by the Oil Rig Deepwater Horizon*, 802 F. Supp. 2d 725, 731 (E.D. La. 2011) (proximate causation lacking; "Plaintiffs ask the court to assume multiple steps occurring between BP's alleged fraud and Plaintiffs' injuries").

\* \* \* \* \*

Plaintiffs' case started out with a supposed duty to record mortgage assignments under Louisiana law, then changed into a supposed duty to record under the federal Trust Indenture Act, and included an alleged RICO claim without injury, a valid enterprise, or causation. But Plaintiffs have no right of action and lack power to sue. There is no duty to record under any law cited in their complaints. And there is no RICO claim stated. The Court should dismiss the Second Amended Complaint with prejudice, as multiple other courts have done in similar cases.

Respectfully submitted,

/s/ Kent A. Lambert
Kent A. Lambert (La. Bar. #22458)
Katie L. Dysart (La. Bar #31449)
BAKER DONELSON BEARMAN CALDWELL &
BERKOWITZ, PC
201 St. Charles Ave., Ste. 3600
New Orleans, La. 70170
Tel.: (504) 566-5200
Fax: (504) 636-4000
klambert@bakerdonelson.com
kdysart@bakerdonelson.com

*Attorneys for CitiMortgage, Inc. and Wells Fargo Bank, N.A.*

Thomas M. Hefferon (*pro hac vice*)
Joseph F. Yenouskas (*pro hac vice*)
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, D.C. 20001
Tel.: 202.346.4000
Fax: 202.346.4444
thefferon@goodwinprocter.com
jyenouskas@goodwinprocter.com

*Attorneys for Bank of New York Mellon, Bank of America, N.A., Merrill Lynch Credit Corporation, La Salle Bank, N.A., and Wells*

/s/ Anthony Rollo
Anthony Rollo (La. Bar #1133)
Christine Lipsey (La. Bar #1182)
Kimberly Higginbotham (La. Bar #31779)
MCGLINCHEY STAFFORD, PLLC
Fourteenth Floor, One America Place
Baton Rouge, La. 70825
Tel.: (225) 383-9000
Fax: (225) 343-3076
arollo@mcglinchey.com
clipsey@mcglinchey.com
khigginbotham@mcglinchey.com

*Attorneys for Bank of New York Mellon, Bank of America, N.A., Merrill Lynch Credit Corporation, and La Salle Bank, N.A.*

/s/ Thomas V. Panoff
Lucia Nale (*pro hac vice*)
Thomas V. Panoff (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Dr.
Chicago, Ill. 60606
Tel.: (312) 701-8821
Fax: (312) 706-8297
lnale@mayerbrown.com
tpanoff@mayerbrown.com

*Fargo Bank, N.A.*

/s/ Monique Lafontaine
Monique Lafontaine
LOCKE LORD LLP
601 Poydras St., Ste. 2660
New Orleans, LA  70130
Tel.: 504-558-5133
Fax: 504-681-5223
mlafontaine@lockelord.com

P. Russell Perdew (*pro hac vice*)
LOCKE LORD LLP
111 South Wacker Dr.
Chicago, Ill.  60606
Tel.: (312) 443-1712
Fax: (312) 896-6712
rperdew@lockelord.com

*Attorneys for U.S. Bank, National Association*


/s/ Michael D. Ferachi
Michael D. Ferachi (La. Bar #19566)
Christine Lipsey (La. Bar #1182)
Fourteenth Floor, One American Place
301 Main St.
Baton Rouge, La.  70825
Tel.: (225) 383-9000
Fax: (225) 343-3076
mferachi@mcglinchey.com
clipsey@mcglinchey.com


Of counsel:

Mary Beth Hogan
Dino LaVerghetta
DEBEVOISE & PLIMPTON LLP
919 Third Ave.
New York, N.Y.  10022
Tel.: (212) 909-6996
Fax: (212) 909-6836
mbhogan@debevoise.com
dllaverg@debevoise.com

*Attorneys for CitiMortgage, Inc.*

/s/ James S. Wertheim
James S. Wertheim (*pro hac vice*)
MCGLINCHEY STAFFORD, PLLC
2550 Chagrin Boulevard, Ste. 406
Cleveland, Ohio  44122-4640
Tel.: (216) 378-9905
Fax: (216) 378-9910
Email:  jwertheim@mcglinchey.com

Christine Lipsey (La. Bar #1182)
Kimberly Higginbotham (La. Bar #31779)
MCGLINCHEY STAFFORD, PLLC
Fourteenth Floor, One American Place
Baton Rouge, La.  70825
Tel.: (225) 383-9000
Fax: (225) 343-3076
Email:  clipsey@mcglinchey.com
khigginbotham@mcglinchey.com

*Attorneys for SunTrust Mortgage, Inc.*

/s/ Monique Weiner
Monique Weiner (La. Bar #23233)
Mark Best (La. Bar #29090)
KUCHLER POLK SCHELL WEINER &
RICHARDSON, LLC
1615 Poydras St., Ste. 1300
New Orleans, La.  70112
Tel.: (504) 592-0691
Fax: (504) 592-0697
mweiner@kuchlerpolk.com
mbest@kuchlerpolk.com

Of counsel:

Michael H. Carpenter (*pro hac vice*)
Katheryn M. Lloyd (*pro hac vice*)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Ste. 1300
280 North High St.
Columbus, Ohio  43215
Tel.: (614) 365-4100
Fax: (614) 365-9145
carpenter@carpenterlipps.com

*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

/s/ Gregory J. Marshall
Gregory J. Marshall (*pro hac vice*)
SNELL & WILMER LLP
One Arizona Center
400 E. Van Buren
Phoenix, Ariz. 85004-2202
Tel.: (602) 382-6514
Fax: (602) 382-6070
gmarshall@swlaw.com

Thomas K. Potter, III (La. Bar #17438)
BURR & FORMAN LLP
700 Two American Center
3102 West End Ave.
Nashville, Tenn. 37203
Tel.: (615) 724-3200
Fax: (615) 724-3290
tpotter@burr.com

Katrina L. Dannheim (La. Bar #33773)
BURR & FORMAN LLP
11 North Water St., Ste. 22200
Mobile, Ala. 36602
Tel.: (251) 345-8234
Fax: (251) 344-9696
kdannheim@burr.com

*Attorneys for HSBC Finance Corporation and HSBC Bank USA, N.A.*

Dated: November 12, 2012

lloyd@carpenterlipps.com

*Attorneys for Defendant Nationwide Advantage Mortgage Company*

/s/ Covert J. Geary
Covert J. Geary
JONES WALKER
201 St. Charles Ave.
New Orleans, La. 70170-5100
Tel.: 504.582.8276
Fax: 504.589.8276
cgeary@joneswalker.com

/s/ Elizabeth A. Frohlich
Elizabeth A. Frohlich (*pro hac vice* to be submitted)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, Cal. 94105-1126
Tel.: (415) 442-1000
Fax: (415) 442-1001
efrohlich@morganlewis.com

*Attorneys for Defendant Deutsche Bank AG*

/s/ V. Thomas Clark, Jr.
V. Thomas Clark, Jr. (La. Bar #20519)
William D. Shea (La. Bar # 29419)
Scott M. Levy (La. Bar #33243)
ADAMS AND REESE, LLP
450 Laurel St., Ste. 1900
Baton Rouge, La. 70801
Tel.: (225) 336-5220
Fax: (225) 336-5220

*Attorneys for United Guaranty Corp.*